Ira R. DEICHES, Receiver for Crest
Con, Inc., Plaintiff,

v.

CARPENTERS' HEALTH AND WELFARE FUND OF PHILADELPHIA,
Defendant.

Civ. A. No. 82–2136.

United States District Court,
D. New Jersey.

Oct. 6, 1983.

Daniel M. Kurtzman, Freeman, Gerstein, Mintz, Hagner & Deiches, Haddonfield, N.J., for plaintiff.

Mary A. Kelly, Tomar, Parks, Seliger, Simonoff & Adourian, Haddonfield, N.J., William J. Einhorn, Sagot & Jennings, Philadelphia, Pa., for defendant.

## OPINION

GERRY, District Judge.

This case concerns the relationship between the preemption clause of the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1002, and the State of New Jersey's Insolvency and Reorganization "Preference" statute, N.J.S.A. 14A:14–14.

Defendant Carpenters' Health and Welfare Fund of Philadelphia is a trust fund (hereinafter "the Fund") established under an agreement and declaration of trust, and under various collective bargaining accords between the Metropolitan District Council of Philadelphia and Vicinity, United Brotherhood of Carpenters and Joiners of America, and employers in the construction industry. The Fund provides health and welfare benefits to its members, their dependents and beneficiaries. As such, it constitutes an employee welfare benefit plan and a multi-employer plan within the meaning of § 3 of ERISA, 29 U.S.C. § 1002. Crest Con, Inc., now in receivership under plaintiff Deiches, assumed obligations to pay employer fringe benefit contributions into the Fund. Crest Con, Inc. became delinquent on those obligations sometime in 1979 or 1980, in the amount of $17,212.50.

In July 1980, the Funds Collections Manager attempted to collect that delinquency without success. But on or about January 20, 1981, the Fund received in the mail a check from the Fidelity Title Abstract Company in the amount of $17,212.50, in full and final payment and release of Crest Con, Inc. from all claims by the Fund.

Less than a month later, another creditor of Crest Con, Inc. commenced an action in the Superior Court of New Jersey, seeking a determination that Crest Con, Inc. was an insolvent corporation and requesting the appointment of a receiver. On March 3, 1981, the Superior Court entered an order appointing plaintiff Deiches as the statutory receiver.

As receiver, plaintiff generally has the statutory power, under certain conditions, to recover property transferred by the insolvent corporation within four months of the date of commencement of the receivership action. That is, the receiver may effectively void preferential transfers of property. N.J.S.A. 14A:14–14.

Since Crest Con, Inc. transferred $17,-212.50 to the Fund in January of 1981 and the receivership action commenced less than a month later, plaintiff receiver now seeks recovery of those monies, under the State's preference statute.

The Fund moves for summary judgment on several grounds. First, defendant argues that Section 514(a) of *ERISA,* 29 U.S.C. § 1144(a), preempts the application of the State's preference statute. Alternatively, defendant urges that application of the preference statute would conflict with ERISA, §§ 403, 404, 406 and 515.

Finally, defendant urges that, assuming the applicability of the preference statute, the transfer of monies to the Fund does not constitute a voidable preference.

I. *ERISA Preemption Clause:* § 514, 29 U.S.C. § 1144.

Section 514 of ERISA reads in relevant part:

(a) ... the provisions of this Subchapter [29 U.S.C. Sections 1301 to 1381—Plan Termination Insurance] of this Chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ....
(c) For purposes of this Section: (1) the term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State ... (2) the term "State" includes a State, any political subdivision thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this Subchapter.

Defendant relies principally upon the quoted language to argue that ERISA preempts the New Jersey preference law as it would otherwise apply to a transfer of monies to the Fund, an employee benefit trust under ERISA.

Defendant also highlights several provisions of ERISA—§§ 403, 404, 406 and 515—which appear to conflict with the application of the preference statute in the instant case. Defendant seems to urge that the presence of such conflicts bolsters the view that the preference statute "relates to" an ERISA plan. Moreover, quite apart from the preemption clause in § 514, defendant argues that the presence of assertedly significant conflicts between the federal and state statutes warrant preemption.

Plaintiff for his part, denies that ERISA preempts the New Jersey State preference law; plaintiff contends that the preference statute does not "relate to" an ERISA plan or fund in the sense the statute envisions.

The parties concur that a state law need not on its face or "directly" affect an ERISA plan in order to fall within the preemption of § 514(a). Indeed, for the purposes of the preemption provision, ERISA defines the term "State" to include: "a State, any political subdivision thereof, or any agency or instrumentality of either, which purports to regulate, *directly* or *indirectly,* the terms and conditions of employee benefit plans ...." 29 U.S.C. § 1144(c)(2) (emphasis added). That is, ERISA precludes the states from avoiding through form the substance of the preemption provision. *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 525, 101 S.Ct. 1895, 1907, 68 L.Ed.2d 402 (1981).

Plaintiff and defendant differ, however, on what *kind or extent* of bearing or impact a state law must have on an ERISA plan in order that the law fall within the ERISA

preemption clause. Plaintiff argues, in essence, that not every state law which has a *conceivable* impact upon an ERISA plan falls within ERISA's preemption. According to plaintiff, there are "outer bounds" to the ERISA preemption clause, and the New Jersey preference statute lies beyond those outer bounds.

Whatever those outer bounds may be, defendant Fund asserts that the preference statute rests well within their borders, for its application would prevent or frustrate the payment of statutorily-mandated employer contributions in the instant case, run afoul of the Fund's trustee's fiduciary duties, and generally constitute a prohibited transaction under ERISA rules.

Plaintiff, on the other hand, argues that a state law "relates to" an ERISA plan only if that state law *purports to regulate, directly or indirectly,* the terms and conditions of such plans, as opposed to having a quite indirect and minor effect on the plan's financial fortunes.

In *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), the Supreme Court held that ERISA preempted a New Jersey statute (N.J.S.A. 34:15–29) that prohibited pension plans from setting off Workman's Compensation payments against retirement payments. The Supreme Court noted that federal law permitted a method for calculation of pension benefits known as "integration"; the integration method, permissible under ERISA, allowed for a reduction in pension benefits based on Workman's Compensation awards. *Id.* at 517–521, 101 S.Ct. at 1903–1905. Thus, the New Jersey state law, by forbidding such offsets, interfered with a method of calculation of retirement benefits that ERISA permits.

In reaching the conclusion that the state law "related to" an ERISA plan, the court eschewed any analysis of the purpose of the state statute, and instead focused upon its effect: interference with a method of calculation of benefits permitted by ERISA. *Alessi, supra,* 451 U.S. at 524–25, 101 S.Ct. at 1906–07.

The *Alessi* decision affirmed the Third Circuit's holding that ERISA preempted the New Jersey statute. *Buczynski v. G.M. Corp.,* 616 F.2d 1238 (3d Cir.1980). The Third Circuit appeared to base its holding on its conclusion that the New Jersey statute's sole *purpose and effect* was to set forth an additional requirement for pension plans. The Supreme Court, as noted above, did not focus upon the *purpose* of the statute, and expressly disavowed the Third Circuit's reasoning. Rather, the Supreme Court relied on the state statute's *effect:* the statute eliminated an ERISA-sanctioned method of calculating pension benefits, and so "related to" an ERISA plan.

In *Alessi,* the Court expressly declined to define the outer bounds of ERISA's preemptive language. *Alessi, supra,* 451 U.S. at 525, 101 S.Ct. at 1907.

Thus, the *Alessi* formulation concentrates our attention upon *effect,* but does not resolve questions about the nature or scope of effect necessary to provoke preemption. For example, *Alessi* does not decide whether a state statute's effect upon an ERISA plan must be general or common to all pension plans, or whether an effect may trigger preemption if the effect applies to only one or a small number of plans. Neither does *Alessi* determine whether a state law that interferes with an ERISA fund's ability to retain an employer's contribution into a plan, but does not in any way affect the internal workings of an ERISA plan, fails because of preemption.

A small number of authorities sketch the outlines of what qualifies as an impermissible intrusion on the federal regulatory ERISA scheme.

In *Delta Airlines v. Kramarsky,* 650 F.2d 1287 (2d Cir.1981), plaintiff benefit plans challenged a provision of the New York Human Rights Law requiring that employee benefit plans provide coverage for disability due to pregnancy on the same basis on which other disabling conditions are covered. The Second Circuit originally held that ERISA did not preempt the Human Rights Law, but the court did not explain any rationale other than *stare decisis.* (The

Minnesota Supreme Court had found no ERISA preemption of a similar Minnesota law, in *Minnesota Mining & Manuf. Co. v. Minnesota*, 289 N.W.2d 396 (Minn.1979), *appeal dismissed*, 444 U.S. 1041, 100 S.Ct. 725, 62 L.Ed.2d 726 (1980)). The Supreme Court's dismissal of the appeal constituted a judgment on the merits—so the Court of Appeals held.

The original *Kramarsky* opinion issued before *Alessi;* upon reconsideration in light of *Alessi,* the Second Circuit reversed its ground and held the Human Rights Law preempted by ERISA. *Delta Air Lines, Inc. v. Kramarsky,* 666 F.2d 21 (2d Cir.1981) ("Kramarsky II"). Observing that ERISA left to employers and collective bargaining agreements the question of disability benefits for pregnancy, the court found that the Human Rights Law requiring the payment of benefits for pregnancy impermissibly intruded upon, and therefore "related to," the federal ERISA scheme and ERISA plans. *Id.,* 666 F.2d at 24–25.

Thus, *Alessi* preempted a state statute governing calculation of ERISA benefits; *Kramarsky* preempted a state law that regulated the extent of disability coverage under an ERISA plan. That is to say, the state laws in *Alessi* and *Kramarsky* affected, or "related to," the internal workings of a plan. More specifically, they nullified an internal plan rule which ERISA either approved or permitted.

■ In the instant case, the New Jersey preference law does not have any effect upon the rules, procedures or policies of an ERISA-governed plan. Rather, in the specific case before the court, the state law would merely require the return of certain employer's contributions made to the plan within four months of insolvency to the extent that those payments fit the state law's definition of a "preference."

Defendant invokes the recent decision of the Second Circuit in *Stone & Webster Engineering Corp. v. Ilsley,* 690 F.2d 323 (2d Cir.1982), to support its view that the New Jersey preference law sufficiently "relates to" ERISA to suffer preemption under § 515.

In *Stone & Webster,* an employer challenged the applicability of a Connecticut statute requiring the continuation of employer contributions to an ERISA fund on behalf of employees who were receiving workman's compensation. The relevant collective bargaining agreement did not contain any provision requiring continuing contributions by the employer when an employee is collecting workman's compensation benefits, rather than working. The collective bargaining agreement under which the Fund received employer contributions required the employer to pay into the Fund 75 ¢ per hour only for hours actually worked by each employee. The parties to the agreement had the power under ERISA to define the employer's contribution obligations. The parties did so, limiting contributions to 75 ¢ per hour for every hour actually worked. The State of Connecticut's statute, however, imposed a further contributory obligation on the employer for hours *not* worked by a worker on workman's compensation. Thus, the Connecticut statute directly encroached upon an ERISA benefit plan's method of assessing an employer's contributory obligation; as such, the state law "related to" the plan and was not preempted.

*Stone & Webster* is, like *Alessi,* readily distinguishable from the case at bar. The Connecticut statute directly and expressly regulated employer's obligations under ERISA plans. The New Jersey preference law, in contrast, does not directly regulate plans or employer contributions to plans. It neither adds nor subtracts anything from those plans. In § 514 of ERISA, Congress "clearly eliminated the threat of conflicting state and local regulation of employee benefit plans." *Stone & Webster, supra,* 690 F.2d at 329. But the New Jersey preference statute does not constitute such a regulation, unlike the Connecticut statute in *Stone & Webster.*

Thus, § 514, standing alone, does not by itself invalidate or preempt the New Jersey's preference law, nor that law's application to the payment of contributions in the instant case. The state preference law here

does not in any way affect the internal workings or rules and regulations of the ERISA plan. It is a law of general application, applying to all creditors who receive payment from a debtor within four months of the commencement of a receivership action against the debtor. The court holds that such a law does not "relate to" an ERISA plan within the meaning of § 514.

## II.

There remains first defendant's argument that numerous supposed conflicts between specific ERISA provisions and the preference statute amount to sufficient interference with the plan to make the state statute one that "relates to" an ERISA plan. Derivatively or alternatively, defendant seizes on those conflicts as grounds for preemption, independent of § 514.

### A. *§ 515 of ERISA*

The defendant argues that, as in *Alessi,* the preference statute treads upon § 515 of ERISA, 29 U.S.C. § 1145, reading in relevant part:

Delinquent Contributions. Every Employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

Conceptually, § 1145 could enter this discussion in two ways: first, it might stand as a factor to be considered in determining whether the preference statute "relates to" an ERISA governed plan, 29 U.S.C. § 1144; second, and quite apart from the specific preemptive provision of ERISA, § 1145 raises the related but distinct argument that Congress has so occupied the field of employer contributions to plans that a preference statute may not interfere with that federal scheme. The questions are so closely intertwined, despite their conceptual differences, that the answer to one suggests the resolution of the other.

At least one district court has concluded that when the state law has only *an indirect effect on the plan and where it is one of general application which pertains to an area of important state concern, a court should decline to find preemption.* *Provience v. Valley Clerks Trust Fund,* 509 F.Supp. 388, 391 (E.D.Cal.1981).

As the court in *Provience* observed, this conclusion finds analogy in *New York Telephone Co. v. New York State Dept. of Labor,* 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979) (plurality opinion). In *New York Telephone Co.,* the Court held that a state law requiring payment of unemployment benefits to striking employees was not preempted by federal labor law. The state law did not directly regulate the relations between management and labor but was a law of general applicability. The law implemented a broad state policy that did not primarily concern labor relations, but rather a policy implicated whenever members of the labor force become unemployed. That policy was one New York State considered important to the community's interest in the welfare of persons affected by a strike. *Id.* at 533–34, 99 S.Ct. at 1337–38. As such, the law exhibited certain indicia that rendered it a poor candidate for preemption.

Under such an analysis, the New Jersey preference law should escape preemption by ERISA, for the preference law affects the ERISA plan in only the most tangential way—indeed, if it affects the "plan" at all. Looked at in one light, the law merely impairs the fortunes of the ERISA plan by requiring the disgorgement of some contribution payments made by an insolvent employer-contributor. In a different light, the preference law might be said to impair the Fund's retention of delinquent (or non-delinquent) contributions if payment is made within four months of receivership. But under conditions established by the statute, strictly speaking, the preference law does not impair the employer's *obligation* to make the payments. It merely provides for those payments' return when those payments are rendered a "preference" under the state law. Thus the ultimate impact is

to treat an ERISA plan as any other creditor of an insolvent employer-contributor is treated. The Fund, it would seem, still is eligible to participate, like all other creditors, in the disposition of the corporation-in-receivership's assets. So the impact upon the "plan" itself—its content or ways of operation—is non-existent. The conflict, if any, between § 515 and the New Jersey statute is insubstantial. The preference law is one of general application and, insofar as it protects creditors and shareholders of insolvent corporations, it is one of great concern to the State of New Jersey. *See In Re: Distillers Factors Corp.,* 91 F.Supp. 796 (D.N.J.), aff'd, 187 F.2d 685 (3d Cir.1951), *cert. denied,* 342 U.S. 824, 72 S.Ct. 45, 96 L.Ed. 623 (1951).

Based on the foregoing, the court thinks it clear that this preference statute does not "relate to" an ERISA plan in the sense envisioned by *Alessi,* nor does it substantially conflict with § 515.

Indeed, the court cannot conclude that § 515's provision regarding payment of delinquent contributions manifests a congressional intent so to occupy the field of employer contributions to benefit plans as to preempt the preference law.

In determining a statute's preemptive effect, the courts focus upon Congress' intent in framing a statute. *See New York Telephone Co. v. New York Labor Dept.,* 440 U.S. 519, 526–27, 99 S.Ct. 1328, 1333–34, 59 L.Ed.2d 553. The Supreme Court has rehearsed the legislative history of § 1145 in *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 102 S.Ct. 851–860, 70 L.Ed.2d 833 (1982). The Court concluded that Congress intended by enacting § 1145 solely to give trustees of pension plans a federal statutory cause of action to collect contributions from employers who are delinquent in making payments according to their contractual agreements. *Id.*

As discussed above, the preference law in no way restricts the employer from making contributions to the pension plan, and in no way eliminates the federal statutory cause of action by a trustee against an employer who is delinquent in his contributions. The New Jersey statute, therefore, has no impact whatsoever in the field of the obligation of the employer to make contributions, or in the ability of a trustee to bring suit against the employer. An employer who is delinquent in his pension contributions can find no defense within N.J. S.A. 14A:14–14 to his obligations, as this statute has no bearing, whatsoever, upon whether or not he should make his contributions. The New Jersey law merely requires that the defendant be given no higher priority than any other creditor in a similar class upon disbursement of the assets of an insolvent corporation. Section 515 does not serve to preempt the preference statute.

B. *Alleged Conflicts with §§ 403 and 404.*

Section 403(c)(1) of ERISA, 29 U.S.C. § 1103(c)(1), states that:

Except as provided in paragraph (2), (3), or (4) or subsection (d) of this section, or under Section 4042 and 4044 of this title (relating to termination of insured plans), *the assets of a plan shall never inure to the benefit of any employer* and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the Plan. (Emphasis Supplied.)

Section 403 does delineate certain limited instances in which an employer's contributions to the plan may be refunded to the employer, but none of those limited circumstances are relevant here, and the parties do not urge their relevance.

According to defendant, § 403's command that the assets of a plan "shall never inure to the benefit of any employer" precludes a payment by the plan to the receiver under the preference statute.

In *Martin v. Hamil,* 608 F.2d 725 (7th Cir.1979), two business partners sought a refund of contributions they made on their own behalf to a multi-employer fund. The trustees of that fund determined that the partners (who arguably were employers *and* employees) were ineligible to receive bene-

fits because of their status as "employers," rather than "employees." The Seventh Circuit affirmed, holding that indeed such a return of monies to the partner-employers would violate the rule of § 403. Given that conflict, the court concluded that the partners were not entitled to recover monies.

If one accepts the thrust of *Martin,* then the sought-for return of monies from the Fund in the instant case would run afoul of § 403. Presumably, as a violation of § 403, Supremacy Clause principles would bar such a transfer.

On the other hand, plaintiff observes with some justification that the legislative history of § 403 suggests that the § 403 general rule against fund assets inuring to the employer's benefit was intended to preclude misconduct, insider abuse, mismanagement and corruption—and not the kind of legitimate return of funds the receiver seeks, pursuant to New Jersey law.

Plaintiff argues that Congress did contemplate that some "returns of funds" to employees would fall outside the general ban. Section 403(c) sets out, as mentioned above, four such situations in which return of funds is allowed:

(1) where contributions were made by mistake of fact;

(2) contributions were conditioned on the qualification of the plan under the Internal Revenue Code;

(3) contributions were conditioned upon the deductibility of the contributions under the Internal Revenue Code;

(4) the contributions were excessive, thus triggering liability for excise taxes.

Plaintiff would infer, from the creation of those § 403 exceptions, a general congressional recognition that *some* transfers to employers are allowable. Plaintiff would build this inference into a judicial license to recognize other allowable transfers.

Defendant, on the other hand, rightly observes that the congressional provision of very limited exceptions to the general rule, justifies the *opposite* inference, i.e., that where Congress has recognized only *some* exceptions, a failure to recognize others, or expressly allow for the recognition of others, shows an intent to rule out all other exceptions.

The court has examined at some length the voluminous legislative history of ERISA and finds no strong indication that Congress intended to reach with a prohibition of return of funds, the surrender of funds to a receiver.

Indeed, the legislative history suggests that Congress was concerned about corrupt, insider practices when it carefully circumscribed the right of an ERISA fund to return monies to an employer, and set out restrictions on dealings with parties in interest in general. *See* H.Conf.Rep. No. 93–1280, *reprinted* in U.S.Code Cong. & Admin. News, 93rd Cong., 2d Sess., at 5038, 5087.

■ The instant case falls between the stools of § 403's command that the assets of a plan shall never inure to the benefit of any employer, on one hand, and the limited provisions for return of funds to an employer, on the other. A surrender of funds to the receiver does not "inure to the benefit" of the debtor-employer—it benefits the *creditors* of the employer. Neither does it represent, in any strict sense, a "return of funds" that must fit one of § 403's narrow categories, for the funds go to the employer's creditors, not the employer-party in interest. Thus, the court holds that there is no square conflict between § 403 and the operation of the New Jersey preference statute in the instant case, and no conflict sufficient to warrant preemption or invalidation of the state law under Supremacy claim principles.

Moreover, the court concludes, on the basis of the above, that the alleged conflict between § 403 and the preference statute does not make the preference statute one that "relates to" an ERISA plan.

## C. *ERISA § 406.*

Defendant makes similar arguments of conflict between § 404 of ERISA and the preference statute.

Section 404 of ERISA, 29 U.S.C. § 1104, provides in relevant part that:

(a)(1) Subject to Sections 403(c) and (d), 4042, and 4044 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(a) for the exclusive purpose of:

(i) providing benefits to the participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan . . .

A similar fiduciary duty is set out in 29 U.S.C. § 186, (the Lab.Manag.Rel.Act § 302(c)(5)), which apparently governs this Fund as well.

Defendant argues that it would not be in the sole and exclusive interest of the Fund's participants and beneficiaries to turn over $17,212.50 of trust fund assets to Crest Con's receiver.

It is conceptually hard to see a breach of fiduciary duty arising from the Fund turning over the monies if the turnover results only from an order of the court. Nonetheless, the fiduciary duty set out in 29 U.S.C. § 1104 (§ 404) is made subject by § 404 to § 403—thus making an overriding part of the trustee's beneficiary duty an obligation to ensure that the assets of a plan "shall never inure to the benefit of any employer."

Plaintiff again argues that the fiduciary language of § 404, even read together with § 403, only aims to regulate investment activities of the ERISA funds so as to prohibit investment expenditures that do not benefit the trust and its beneficiaries. See, e.g., U.S.Code Cong. & Ad.News, 93rd Cong., 2d Sess. at 5083 (Senate Committee Report).

The congressional intent of the several sections imposing fiduciary duties on trustees and restricting the uses of plan funds seems threefold. In § 403, Congress sought to restrict insider and self-serving dealings with Fund assets; in § 404, Congress set forth a federal "prudent man" fiduciary standard to provide uniformity, rather than leaving fiduciary responsibilities to the di-vergent concepts of state law; in § 406, Congress sought to prevent trustee abuse, management and malfeasance. See generally House Conference Report No. 93–1280, U.S.Code Cong. & Admin.News, 93rd Cong., 2d Sess., Vol. 3, P. 5038, 5075.

Only by a strained, formalistic reading of the statute could one argue that surrender of the funds to the receiver would violate the trustee's fiduciary duties. It is true that such disgorgement would not help the beneficiaries directly. But that is true of any payment of any Fund expense other than benefit payments. Yet the Fund, like any economic entity, must operate within prevailing economic and legal restraints. It must fulfill its contractual obligations to those who provide it with goods and services, for example. And to the extent that a person makes a fraudulent or illegal payment to the Fund, the trustee has the right and responsibility of any other economic actor who receives such a payment. In effect, obeisance to the preference statute is a cost of doing business—an expense, as it were, of administering the plan.

■ Once again, the court's analysis leads it to conclude that the asserted conflict between § 404 and the preference statute does not render the preference statute one that "relates to" an ERISA plan.

### D. Prohibited Transaction—§ 406

Defendant argues that a transfer of the Fund's assets would contravene § 406, which provides as follows:

(a) Except as provided in Section 408 of this Title:

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a *direct or indirect* —

\*    \*    \*    \*    \*    \*

(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the Plan . . . (Emphasis supplied.)

Section 408 of ERISA provides a mechanism whereby a Fund may obtain an ex-

emption from prohibited transactions. Such an exemption may be granted only by the Secretary of Labor *and* only after the Secretary of Labor determines that such an exemption is (1) administratively feasible, (2) in the interests of the plan and of its participants and beneficiaries, and (3) protective of the rights of participants and beneficiaries of such plan. The use of trust fund assets to satisfy the claims of Crest Con's other creditors would clearly not satisfy this burden.

ERISA further defines a "party in interest" to include "an employer any of whose employees are covered by such plan." 29 U.S.C. § 1002(14)(c).

Thus conceived, and uncritically accepting the assumption that the receiver shall be treated as if it were Crest Con (the employer), § 406 would prohibit the transfer of monies from the Fund to the employer.

Plaintiff, for his part, again relies upon legislative history to argue that a return of a preferential transfer is not the type of transaction contemplated by Congress in its enactment of § 406. The House Report, for example, characterized the prohibited transactions as "the most serious type of fiduciary misconduct which in one way or another has occurred in connection with some welfare or pension plans." *See* U.S. Code Cong., & Admin.News, 93rd Cong., 2d Sess. at 4639, 4651, H.Rep. No. 93–533.

That is, plaintiff appears to be arguing that Congress meant to prohibit transactions that were *per se* or intrinsically evil or violative of common-sense notions of fiduciary obligations. Plaintiff would not discern such an intrinsic evil in the return of monies that were a preferential transfer; if such a transfer is a violation of a fiduciary duty, it is a violation *only* because it fits within the technical, literal words of the relevant ERISA provisions.

Admittedly, the language of § 406 is very broad. It prohibits any transfer of fund assets that would constitute a "transfer to, or use by, or for the benefit of, the employer."

But as the court has already noted, the instant case simply does not resemble the kind of transfer of funds with which Congress was so clearly concerned, and so falls outside the proscription of § 406.

To rule otherwise would grant ERISA plan-Fund's immunities from general state law obligations, an immunity that Congress gave no hint of a desire to confer. The court finds nothing in the Act or its history to suggest that Congress sought to immunize ERISA funds from entanglement with state insolvency laws or a receiver's avoidance powers.

In sum, the defendant's motion for summary judgment on preemption grounds will therefore be denied.

### III. *The Payment to the Fund as a Preference.*

Defendant moves for summary judgment alternatively on the ground that the preference statute does not render the payment of the delinquent contributions a "preference" within the meaning of N.J.S.A. 14A:14–14.

Under the New Jersey statute, a preference arises when

(a) a corporation which, while insolvent, and within four months of the commencement of a receivership action by or against it, transfers any property to or for the benefit of a creditor for or on account of an antecedent debt; and

(b) the effect of such transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class; and

(c) the creditor receiving or to be benefited by the transfer, or his agent acting with reference thereto, has, at the time when the transfer is made, reasonable cause to believe that the corporation is insolvent.

Defendant contends that the Fund and its agent or agents had no reasonable cause to believe that the employer corporation was insolvent at the time that the corporation made the delinquent payment. The defendant has submitted the affidavit of David Costello, collections manager for the Fund, attesting that neither the Fund nor the

manager believed or had any reasonable cause for belief that Crest Con was insolvent when the delinquent payment was made and received. The affidavit fairly lays out a factual basis for that absence of reasonable cause for belief.

Plaintiff receiver has not responded with any affidavits. Thus defendant urges that the facts in its affidavit are undisputed and provide an appropriate basis for granting defendant's motion for summary judgment.

Defendant's position states well the law on a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The plaintiff concedes as much, but urges that he is entitled to discovery by way of obtaining defendant's answers to interrogatories, already propounded, before an entry of summary judgment is appropriate. Plaintiff's brief fairly implies that the receiver is not capable of responding to defendant's affidavit without such discovery.

For plaintiff to sustain his argument, he must comply with Rule 56(f) of the Federal Rules of Civil Procedure. That Rule states:

> When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

■ The plaintiff has not submitted such an affidavit. Given the complexity and significance of the instant case, and in a spirit of liberality, the court will grant plaintiff ten days from the date of this opinion to submit such an affidavit. Failing such submission, the court will rely upon the affidavits of record to resolve whatever factual issues the motion requires.

In sum, the defendant's motion for summary judgment on the ground of federal preemption of the preference statute will be denied.

Assuming that the plaintiff timely files an appropriate affidavit under Rule 56(f), the defendant's motion for summary judgment on the ground that the transfer was not a preference will be denied without prejudice as premature. Attorney for defendant shall submit an appropriate order.