Leo BONSER, Administrator, United Industrial Workers of North America Welfare and Pension Fund, Robert and Theresa Elia, Frederick E. Doll and Bryan Varn, Plaintiffs,

v.

STATE OF NEW JERSEY, Shirley A. Meyer, Comm'r New Jersey Department of Health, Dorothy Powers, Chairman, New Jersey State Hospital Rate Setting Commission, Newcomb Hospital, John F. Kennedy Memorial Hospital and John F. Kennedy Medical Center, Defendants.

Civ. A. No. 84–1259.

United States District Court, D. New Jersey.

April 1, 1985.

Thomas A. Giblin, Alycia Lynch (on brief), Cranford, N.J., for plaintiffs.

Irwin I. Kimmelman, Atty. Gen., of New Jersey by Charlotte Kitler, Deputy Atty. Gen. (argued), Trenton, N.J., for defendants State of N.J., Shirley A. Meyer, Com'r of N.J. Dept. of Health, Dorothy Powers, Chairman of N.J. State Hosp. Rate Setting Com'n.

Shapiro, Eisenstat & Gabage, by Samuel L. Shapiro, Vineland, N.J., for defendant Newcomb Hosp.

Toll, Sullivan & Luthman, by Edward Sullivan, Cherry Hill, N.J. for defendant John F. Kennedy Memorial Hosp.

Toolan, Abbott & Domenichetti, by Jay M. Hollander, Perth Amboy, N.J., for defendant John F. Kennedy Memorial Center.

## OPINION

COHEN, Senior District Judge:

This action, challenging the constitutionality of New Jersey's hospital rate setting system, is presently before the Court on the motions of plaintiffs seeking a preliminary injunction, an injunction to stay certain New Jersey state court proceedings, certification of both a plaintiff class and a defendant class, and leave of the Court to amend the complaint.

## INTRODUCTION

Plaintiffs in this matter are Leo Bonser, the Administrator of the United Industrial Workers of North America Welfare and Pension Fund (hereinafter the Fund) and several individuals who, through union membership, are beneficiaries of the Fund. Defendants are the State of New Jersey, the Commissioner of its Department of Health, the Chairman of the State Hospital

Rate Setting Commission and several hospitals located in New Jersey. Each of the individual plaintiffs is also a defendant, or potential defendant, in other legal actions commenced in the state courts by the hospitals seeking to collect for services performed but which remain unpaid by the Fund.

The ultimate issue in this case concerns the validity of an amendment to the New Jersey Health Care Facilities Planning Act of 1971, N.J.S.A. 26:2H–1 *et seq.* (West Supp.1984–85) (Planning Act), which created a Hospital Rate Setting Commission (the Commission) to determine and approved a schedule of rates for hospital services based on a patient's diagnosis rather than the specific costs incurred in the patient's treatment.

In practice, this system works in the following fashion: when a patient is diagnosed upon admission to a hospital, that diagnosis is compared with a list of approximately 350 Diagnosis Related Groups (DRG's) and his or her bill is calculated based upon the DRG into which he or she is placed. In addition, the DRG amount is multiplied by a "payor factor" which creates a difference between the amounts charged to various payors such as the Fund and, for example, Blue Cross.[1]

The reasoning behind, and the goal of, the DRG system is to encourage hospitals to treat their patients in the most efficient and cost effective manner possible. In essence, if a hospital can treat a patient for less money than that authorized by the Commission, it can retain the excess. If, however, the hospital's costs exceed those authorized, it may not bill the Fund for the additional amount. Moreover, the DRG system provides for an administrative appeals process whereby the bill for an indi-

vidual, properly within a particular DRG, can be appealed in order to avoid grossly excessive or inequitable charges.[2]

The primary basis of plaintiffs' attack on the DRG system is that it is allegedly preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C.A. § 1001 *et seq.* (West Supp.1984). ERISA is a comprehensive body of federal law, designed to promote and protect the interests of employees and their beneficiaries in pension and welfare benefit plans, which supersedes any and all state laws insofar as they relate to any employee benefit plan described in the Act. *Id.* § 1144(a). In addition, plaintiffs contend that the DRG system is preempted by the National Labor Relations Act, 29 U.S.C.A. § 141 *et seq.* (West Supp.1984), and violates the equal protection and due process clauses of the United States and New Jersey Constitutions, as well as the supremacy clause of the United States Constitution.

Plaintiffs, by their motions, seek injunctions of two types, each initially requiring a separate analysis. First, they seek to have this Court enjoin any further proceedings in several New Jersey state court collection actions brought by the defendant hospitals against a number of the individual beneficiaries of the Fund who are plaintiffs herein. Second, plaintiffs seek a preliminary injunction enjoining the State of New Jersey and the defendant hospitals from any further implementation or enforcement of the DRG system. We shall first consider the request for an injunction to stay the state court proceedings.

## INJUNCTION TO STAY STATE COURT PROCEEDINGS

■ The granting of an injunction of this type is quite unusual and requires a two-

---

**1.** The "payor factor" is a multiplier which distinguishes between one payor (*e.g.* the Fund) and another. These differences are derived from "quantifiable economic benefits rendered to the ... [hospital]." N.J.S.A. 26:2H–18 (West Supp. 1984–85). Examples of the economic benefits which are noted in the statute include the promptness and volume of payments by a payor. *Id.* In essence, the payor factor appears similar to a volume discount which might be

offered by some other supplier of goods or services.

**2.** The collection actions pending in state courts between the hospitals and the Fund beneficiaries have apparently arisen because the Fund will pay only for what it identifies as "actual charges." In some cases, the DRG amount exceeds the amount which the Fund will pay resulting in an underpayment which is being sought from the patients.

step analysis. First, we must determine whether the action falls within the ambit of the Anti-Injunction Act, 28 U.S.C.A. § 2283 (West Supp.1984). If it does, then an injunction cannot be issued regardless of the facts of the underlying case. *See* 17 *Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction* § 4224 (West 1978). However, if the Anti-Injunction Act is not applicable, we must then consider the merits of the injunction request itself. *Mitchum v. Foster*, 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972); *Vendo Co. v. Lektro-Vend. Corp.*, 433 U.S. 623, 645 n. 1, 97 S.Ct. 2881, 2895 n. 1, 53 L.Ed.2d 1009 (1977) (Stevens, J. dissenting) (providing a clear statement of relevant factors).

■ We begin with the Anti-Injunction Act which states that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C.A., § 2283 (West Supp.1984). The Supreme Court has stated that the test to be applied in determining whether Congress has expressly authorized an exception to the Anti-Injunction Act is "whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." *Mitchum v. Foster*, 407 U.S. at 238, 92 S.Ct. at 2160.

It can hardly be contested that ERISA does not create a federal right or remedy enforceable in a federal court of equity. *See Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 522–23, 101 S.Ct. 1895, 1905–06, 68 L.Ed.2d 402 (1981). Thus, the first prong of the *Mitchum* test is satisfied. Satisfaction of the second prong, namely, that the Act could be given its intended scope only by imposing the requested stay, is less clear. The Sixth Circuit, in discussing this second prong, concluded that

> When a district court finds that an action in a state court will have the effect of making it impossible for a fiduciary of a

pension plan to carry out out its responsibilities under ERISA, the anti-injunction provisions of § 2283 do not prohibit it from enjoining the state court proceedings.

*General Motors Corp. v. Buha*, 623 F.2d 455, 459 (6th Cir.1980) (citations omitted). The issue in *Buha* was whether pension benefits from an ERISA covered plan were subject to garnishment by a creditor of a plan beneficiary. Certainly, the plan administrator in *Buha* would have been frustrated in his attempts to carry out his responsibilities if third parties were allowed to garnish the benefits of a plan beneficiary.

In the instant case, the state court proceedings which plaintiffs seek to enjoin are collection actions brought by hospitals in New Jersey to recover from several individual Fund beneficiaries the difference between the DRG amount billed and the "actual costs" incurred which were paid by the Fund.

It is somewhat unclear *at this point* whether ERISA can be given its intended scope only through a stay of the state court actions. Were this Court to eventually find the DRG system to be preempted by ERISA, the issue presently being litigated in the state courts (the validity of the debt) could be rendered moot. However, should we eventually find that ERISA has not preempted the DRG system, then the actions in state court would be entirely appropriate. It must be noted that this matter is before us on plaintiffs' motion for a preliminary injunction. The preemption issue is the ultimate issue of the case and one that we need not decide at this juncture.

Assuming, *arguendo*, that ERISA falls within an exception to the Anti-Injunction Act, we must nonetheless consider the propriety of the issuance of a stay. As the Third Circuit has recently stated:

> A preliminary injunction is not granted as a matter of right. It may be granted, however, if the moving party demonstrates both a reasonable probability of eventual success in the litigation and that the party "will be irreparably in-

jured *pendente lite* if relief is not granted." The trial court may also consider the possibility of harm to other interested persons from the grant or denial of the injunction, as well as harm to the public interest. The grant or denial of a preliminary injunction is committed to the sound discretion of the district judge, who must balance all of these factors in making a decision.

*Spartacus, Inc. v. Borough of McKees Rocks,* 694 F.2d 947, 949 (3d Cir.1982) (citations omitted). Accordingly, if a movant is unable to show either of the first two factors the injunction to stay may be denied.

Regarding the issue of irreparable injury

The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, weighs heavily against a claim of irreparable harm.

*Oburn v. Shapp,* 521 F.2d 142, 151 (3d Cir.1975) (quoting *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.C.Cir.1958) (emphasis in original) (quoted with approval in *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974)).

In the instant case, movants face the potential in the state court actions of having judgments entered against them in varying amounts. Any resulting harm can be corrected at a later date and, therefore, is not irreparable.

■ In our analysis of this matter we have considered whether the option of abstention by this Court should be taken. In essence, it appears that the necessity of plaintiffs' federal court action could be obviated by a finding in state court that the DRG amounts billed have become the "actual charges" within the meaning of the Fund's terms. Our reading of the Third Circuit opinion in *Kennecott Corp. v. Smith,* 637 F.2d 181 (3d Cir.1980) has convinced us, however, that the instant case,

seeking as it does a determination of preemption by ERISA, is not one wherein the Court should abstain. As in *Kennecott Corp.,*

> it is undisputed that the challenged New Jersey provisions apply to [the Fund]. Moreover, the New Jersey statute is clear on its face, and it is not susceptible of being construed in a way that would render it unnecessary to examine its impact on the purposes of [ERISA]. In a preemption case, once it is evident that both a federal and a state law apply to a given situation, resolution of the case turns on an analysis of the policies of federal law.

*Id.* at 185. Thus, the question ultimately before us is whether the policies of federal law, enunciated by the enactment of ERISA, are compatible with those set forth by New Jersey's hospital cost containment provisions. If any ambiguity exists, it appears to be in the Fund's terms relating to "actual charges," not in the New Jersey statute.

Plaintiffs miss the mark with the argument in their supplemental brief that by denying a stay the Court will, in effect, be denying them a forum mandated by Congress. Such is not the case. That forum is presently being used by plaintiffs in this case. Although, from the standpoint of practicality, it might be desirable for the parties to voluntarily move their state court cases to an inactive trial list pending the outcome of this matter, such a consideration does not warrant the requested stay. The issue of the constitutionality of the New Jersey plan is properly before this Court. The state court collection actions will simply decide whether the hospitals have been paid the amount of money due them. Should this Court eventually find the DRG system to be invalid, relief can be construed in a way which will repair any injuries suffered by the Fund beneficiaries.

Because plaintiffs here have failed to show that they will suffer immediate irreparable harm, we shall deny their motion to stay the pending state court proceedings.

## PRELIMINARY INJUNCTION

We now consider plaintiffs' request that we issue a preliminary injunction in order to enjoin any further implementation or enforcement of the DRG system. Unlike their request for a stay of the state court proceedings, this request does not require consideration of the Anti-Injunction Act. Thus, we need only consider the following four factors which have been discussed *supra* at pages 1230–1231. The factors are (1) reasonable probability of eventual success, (2) irreparable injury *pendente lite* if the relief is not granted, (3) potential harm to others from the grant or denial of relief, and (4) potential for harm to the public interest. *See, e.g., Spartacus, Inc.,* 694 F.2d at 949 (3d Cir.1982). As will become more evident in our discussion below, we are most concerned with plaintiffs' constitutional arguments as they relate to the first of these factors.

### *Preemption By ERISA*

██ In their attempt to satisfy the first factor, plaintiffs maintain that New Jersey's hospital rate setting plan has been preempted by ERISA. If plaintiffs are correct, New Jersey's plan must be struck down. It is important to note that the Court, at this time, is concerned only with the "reasonable probability of [plaintiffs'] success" on the merits of this matter. *Id.* We are *not* attempting to make the findings ultimately necessary to resolve this controversy. It must also be noted that plaintiffs bear the burden of establishing the propriety or necessity of the issuance of this extraordinary remedy. *See Kontes Glass Co. v. Lab Glass, Inc.,* 250 F.Supp. 193 (D.N.J.1966) *aff'd* 373 F.2d 319 (3d Cir.1967). *See generally* 11 *Wright & Miller, Federal Practice and Procedure: Civil* § 2948 (West 1973).

There can be no doubt that ERISA was intended by Congress to have a very broad scope of coverage and that numerous attempts to regulate pension and welfare plans at the state level have been preempted. *See Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (provision of New York Human Rights Law affecting employee benefit plans preempted by ERISA insofar as it prohibits practices that are lawful under federal law); *Alessi,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) (provision of New Jersey Workers' Compensation Act affecting pension payments was preempted by ERISA). Indeed, the language of ERISA itself indicates that state regulations are superseded insofar as they "relate to any employee benefit plan described in section 1003(a)" of the Act. 29 U.S.C.A. § 1144(a) (West 1975). Such relation can be direct or *indirect* and still be preempted by ERISA. *Alessi,* 451 U.S. at 525, 101 S.Ct. at 1907.

This broad preemptive scope, however, is not limitless.

Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law "relates to" the plan. *Cf. American Telephone and Telegraph Co. v. Merry,* 592 F.2d 118, 121 (2d Cir. 1979) (state garnishment of a spouse's pension income to enforce alimony and support orders is not pre-empted).

*Shaw,* 463 U.S. 85, —— n. 21, 103 S.Ct. 2890, 2901–02 n. 21, 77 L.Ed.2d 490. The Supreme Court has yet to fully define the preemptive limits of ERISA.

A recent case from the District of New Jersey has held that ERISA did not preempt New Jersey's Insolvency and Reorganization "Preference" statute, N.J.S.A. 14A:14–14. *Deiches v. Carpenters' Health & Welfare Fund of Philadelphia,* 572 F.Supp. 766 (D.N.J.1983). Following the Supreme Court's reasoning in *Alessi, supra,* the court in *Deiches* focused on the *effect* of the State's statute on the employee benefit plan. *Id.* at 769. *Accord Shaw,* 463 U.S. at —— n. 21, 103 S.Ct. at 2901–02 n. 21.

Plaintiffs contend that the New Jersey's hospital rate setting scheme interferes with the administration of the Fund because it sets rates based on a patient's diagnosis rather than on the actual costs incurred. The language of the Fund states that "ac-

tual charges" will be paid but fails to formally define this term. Plaintiffs maintain that the welfare plan cannot be administered in a consistent manner in a multi-state area because the method used to calculate actual charges may vary from state to state. Plaintiffs cannot contend, however, that any standard billing system, used in all New Jersey hospitals, or in all hospitals within the Fund's geographical area, has been disrupted by the implementation of the DRG system. Nor can they properly maintain that the administrative appeals process, which is used when a hospital bill appears to be excessive, imposes a new burden upon them. The fiduciary duty of the Fund administrator should require that he challenge the propriety of any bills appearing to be excessive thus seeking the lowest effective cost for the Fund's beneficiaries. The mere fact that he may have to seek redress in a different forum than that to which he is accustomed is insufficient cause for us to find this new system preempted by ERISA. Keeping in mind that we are not now ruling on the merits of plaintiffs' case, the Court is not convinced that plaintiffs have presented what amounts to a "reasonable probability" of eventual success.[3]

In a supplemental brief in support of their motion, plaintiffs rely on a recent case from the Southern District of New York, *Rebaldo v. Cuomo,* 749 F.2d 133 (2d Cir.1984). In that case, the district court had held that a portion of New York's Public Health Law was preempted by ERISA. The law in question in *Rebaldo,* mandated that certain persons, including small insurance funds, pay a different rate than that paid by large corporate insurers like Blue Cross. Through the use of the "pay-or factor" it appears that the New Jersey DRG system may lead to the same result. The District Judge in *Rebaldo* found that the New York law "referred" to ERISA plans within the meaning of that act and was thus preempted. However, the Court of Appeals for the Second Circuit has recently vacated *Rebaldo,* holding that the law in question therein was not preempted in that it did not "relate" to the plan within the meaning of ERISA. *Id.* at 138.

Even if this Court were persuaded that plaintiffs had demonstrated a reasonable probability of success we would still hesitate to issue a preliminary injunction because of other relevant factors.

■ As heretofore stated, in this circuit a preliminary injunction will not issue unless the moving party can make a clear showing of "immediate irreparable injury." *Ammond v. McGahn,* 532 F.2d 325, 329 (3d Cir.1976). "An injunction may not be used to eliminate the possibility of a remote future injury, or a future invasion of rights. Rather, the plaintiff must demonstrate a 'presently existing threat of irreparable injury.'" *Sovereign Order of Saint John of Jerusalem—Knights of Malta v. Messineo,* 572 F.Supp. 983, 989 (E.D.Pa.1983) (citation omitted). We are not convinced that the "harms" alleged to be suffered by plaintiffs rise to the level required. Plaintiffs' brief refers to problems encountered by the Fund as a result of the DRG system, yet these problems seem to relate more to their

---

**3.** The Court is troubled by the interpretation of the welfare plan which is put forth by plaintiffs. In their brief, plaintiffs seem to argue that the term "actual charges" excludes the terms used by the hospital rate setting scheme. In a portion of the welfare plan appended to the affidavit of plaintiffs' counsel, it is stated that "the plan will pay up to 80 percent of the *reasonable and customary covered expenses* for medical care and services incurred.... Covered expenses are *those charges necessary for the treatment of a sickness or injury, actually incurred on account of such sickness or injury. The charges must be reasonable and commensurate with prices generally furnished in the area concerned.*

(Exhibit A to the October 23, 1984 affidavit of Alicia Lynch, Esquire) (emphasis added). The Court wonders whether the difficulties being encountered by certain plan beneficiaries would not be best resolved by an action seeking an interpretation of the above quoted portion of the plan. It would seem reasonable to read this language as authorizing payments to hospitals based on the DRG system as being those charges which are "reasonable and commensurate with prices generally furnished in the area concerned."

Such an action has not, to our knowledge, yet been instituted.

preemption argument than to a showing of irreparable harm.

■ Next, we note that plaintiffs have not made mention of any potential harm which would be suffered by persons other than parties to this matter which would differ from that already discussed. In fact, the potential for a harm which this Court finds most pressing, the disruption of the state's hospital/health care systems, would likely occur if we granted the relief sought by plaintiffs at this time and enjoined the State of New Jersey, and every hospital therein, from any further implementation of the DRG system. Thus, in balancing potential harms, it is clear that plaintiffs' request should be denied.

Finally, we consider the public policies involved in this case. The principal policy function of the hospital rate setting procedure is cost containment. The spiraling cost of health care over the past decade has seriously hampered the ability of health care insurers (and uninsured individuals) to provide for adequate care at a reasonable cost. *See* Senate Institutions, Health and Welfare Comm., *Statement to Senate No. 446*, May 22, 1978. *See* also, N.J.S.A. 26:2H–1 (West Supp.1984–85).[4] Whether this policy is sufficient to withstand preemption by ERISA is not a question for our consideration at this time. This policy does, however, strongly favor a denial of plaintiffs' request for a preliminary injunction. If the state's rate setting procedure is saving money and aiding cost containment, which appears likely,[5] these policy arguments strongly favor its continuance pending a final decision on its propriety.

After balancing these four factors, we hold that plaintiffs have not demonstrated either the need for, or the wisdom of, a preliminary injunction.

### Preemption By NATIONAL LABOR RELATIONS ACT

As a secondary ground for support of their position that the DRG system has been preempted by federal law, plaintiffs cite the National Labor Relations Act. 29 U.S.C.A. § 141 *et seq.* (West Supp.1984) (NLRA). Unlike ERISA, the NLRA does not contain any explicit preemptive language. As a result, traditional preemption principles have been applied to challenges of this type. *See Brown v. Hotel and Restaurant Employees and Bartenders International Union Local 54,* —— U.S. ——, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984).

In *Brown,* preemption analysis was based on the rationale that the NLRB has primary jurisdiction over the interpretation and application of labor law, presumes federal preemption where the regulated conduct is actually protected by federal law and in conflict with the questioned state law. *Brown,* —— U.S. at ——, 104 S.Ct. at 3186. The state law at issue in *Brown,* the New Jersey Casino Control Act, N.J.S.A. 5:12–1 *et seq.* (West Supp.1984–85), created certain criteria whereby any official of a union representing casino industry employees could be disqualified from holding office. There, the Court held that no substantive conflict existed between the Casino Control Act and the NLRA so as to cause preemption. *Brown,* —— U.S. at ——, 104 S.Ct. at 3190. Unlike *Brown,* which considered the clearly established right of employees "to bargain collectively through representatives of their own choosing," *id.,* the instant case involves a systematic hospital rate setting plan affecting every individual in New Jersey, not just union health plan members. Yet, plaintiffs summarily contend that the DRG system interferes with an important federal interest, *i.e.,* the right of employees and employ-

---

**4.** It should be noted that the Federal government has recently enacted a DRG system similar to New Jersey's for use with the national medicare system. *See* 42 U.S.C.A. § 1395ww(d) (West 1984).

**5.** As was candidly conceded at oral argument by the attorneys for plaintiffs, the welfare fund herein challenging the DRG system would have *saved money* for the first ten months of 1984 if it had gone along with the DRG system and paid the DRG amount for the hospitalization of its beneficiaries.

ers to bargain collectively, and is thus preempted by federal law.

Plaintiffs also cite *Alessi*, 451 U.S. at 525, 101 S.Ct. at 1907. There, *in dicta*, the Court stated that when "pension plans emerge from collective bargaining, the additional federal interest in precluding state interference with labor-management negotiations calls for pre-emption of state efforts to regulate pension terms.... As a subject of collective bargaining, pension terms themselves become expressions of federal law, requiring pre-emption of *intrusive* state law." *Id.* (citations omitted) (emphasis added).

The law in question in *Alessi* had totally eliminated one method of calculating pension benefits. Such a law is clearly intrusive on a pension plan and thus preempted. The law in question in the instant case is so much less intrusive than that in *Alessi* that we cannot find, in light of *Brown*, that preemption is likely.

Also in summary fashion, plaintiffs contend that the DRG system conflicts with the due process and equal protection clauses of the United States and New Jersey Constitutions as well as the supremacy clause of the United States Constitution. We do not find any of these arguments to be meritorious. As a result, plaintiffs' motion for a preliminary injunction shall be denied.

## CLASS CERTIFICATION

In addition to their requests for injunctive relief, plaintiffs seek certification of both a plaintiff and a defendant class. Under Fed.R.Civ.P. 23 a number of specific requirements *must* be met prior to class certification.

Initially, the movant must satisfy each of the following four requirements:

(1) that the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of those of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Once each of these requirements is met, the movant must show that one of the criteria listed in Fed.R.Civ.P. 23(b) is also satisfied.

Considering these requirements individually and in order, it appears that plaintiffs immediately face significant problems. They contend that their class would consist of all of the beneficiaries of the Fund since July 20, 1978, which, they maintained numbered 4,038 in 1983. However, as was pointed out in defendants' brief opposing class certification, the Fund provides benefits to participants in a number of states other than New Jersey.

At oral argument, plaintiffs conceded that the number of beneficiaries located in New Jersey was far fewer than their 4,000 member figure. In addition, they conceded that they did not even know how many of their members had received bills from hospitals for amounts in excess of what the plan terms "actual costs." From all indications, it would appear that the true dispute in this case is between the Fund and the State of New Jersey, thus making class certification unnecessary.

Were the Court to assume that the numerosity requirement has been met, another significant problem is encountered by plaintiffs in the fourth factor, that the representative parties will fairly and adequately protect the interests of the class. By this action, plaintiffs are challenging the constitutionality of New Jersey's hospital rate setting system. As plaintiffs have conceded in their papers, there have been instances where the Fund (and as a result its beneficiaries) has clearly benefitted from the DRG system. In fact, at oral argument the Fund's attorney stated that it was believed that the Fund would have *saved* money during the first ten months of 1984 had it gone along with the DRG system. It is conceivable then, that from within the broad plaintiff class alleged to exist, there will be members who will feel their interests are best protected by an interpre-

tation of the plan's terms in a way authorizing payment of the DRG amount rather than by scrapping the DRG system altogether. The potential for antagonism between the interests of the Fund and certain of its members is sufficient to warrant our denial of certification of the proposed plaintiff class. *See Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975) (citing *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir.1968)).

Given the fact that we find plaintiffs' request for class certification to be unwarranted, in at least two respects, it is unnecessary for us to consider the requirement imposed by Fed.R.Civ.P. 23(b).

 In addition to the request for certification of a plaintiff class, plaintiffs seek to have a defendant class certified. Such a class would consist of all of the 118 health care facilities located in New Jersey which participate in the DRG program. Presently, three of these hospitals are named defendants in this action. Plaintiffs are also seeking leave to amend their complaint in order to add two more hospitals as defendants. As with their request for certification of a plaintiff class, plaintiffs must satisfy each of the requirements of Rule 23(a) and one of the requirements of Rule 23(b). As with their other certification motion, plaintiffs encounter difficulty with the numerosity requirement of Rule 23(a)(1).

By their action plaintiffs seek to have New Jersey's DRG system declared unconstitutional due to preemption by ERISA. Should this Court find the system to be preempted, that finding will apply to everyone in New Jersey—both individuals and hospitals. This point, together with the fact that at this time plaintiffs can readily join any of the hospitals which are bringing actions seeking money from Fund beneficiaries, leads us to the conclusion that a defendant class is unwarranted and unnecessary. *See Aiello v. City of Wilmington, Del.,* 426 F.Supp. 1272 (D.Del.1976); *see also Ihrke v. Northern States Power Co.,* 459 F.2d 566 (8th Cir.1972), vacated as

moot, 409 U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72 (1972). In this instance, we agree with, and find applicable, what was said by the Eighth Circuit in *Ihrke,*

> The determination of the constitutional question can be made by the Court and the rules and regulations determined to be constitutional or unconstitutional regardless of whether this action is treated as an individual action or as a class action. No useful purpose would be served by permitting this case to proceed as a class action.

*Ihrke,* 459 F.2d at 572. We shall thus deny plaintiffs' motion for certification of a defendant class. As with the request for certification of a plaintiff class we find it unnecessary to reach the requirements set forth in Rule 23(b).

In addition to the motions already discussed, plaintiffs seek leave of the Court to amend their complaint to add several Fund beneficiaries as plaintiffs and several New Jersey hospitals as defendants. No opposition to such amendment has been received by the Court and, at oral argument, defendants' attorneys indicated that they did not oppose such amendment. The Court shall grant this motion and shall review any future motions of this type with an eye toward liberal amendment and joinder.

### ORDER

This matter having come before the Court on the motions of plaintiffs, LEO BONSER, Administrator of the UNITED INDUSTRIAL WORKERS OF NORTH AMERICA WELFARE and PENSION FUND, et al., for a preliminary injunction, an injunction to stay certain state court proceedings, certification of a plaintiff class and a defendant class, and for leave to amend their complaint; and

For the reasons stated in the Court's opinion filed this date;

It is on this 1st day of April, 1985, ORDERED that plaintiff's motions for preliminary injunction, stay of state court proceedings and class certifications be and the same hereby are denied;

It is further ORDERED that plaintiffs' motion to amend their complaint be and the same hereby is granted.