695 F.2d 494
 1982-83 Trade Cases 65,083
 In re FINE PAPER ANTITRUST LITIGATION.
Appeal of ALCO STANDARD CORPORATION and certain independent
merchants [Alling & Cory Company; Carpenter Paper of
Nebraska; Lindenmeyr Paper Corporation; Saxon Industries,
Inc.; W.B. Killhour & Sons, Inc.; Ingram Paper Company;
Jim Walter Company (Graham Paper Company) ].
 Nos. 82-1033, 82-1034.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 22, 1982.
Decided Dec. 9, 1982.
 
 Howard D. Scher (argued), E. Jeffrey Walsh, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for Alco Standard Corp.
 Gordon J. Lipson, Goldstein, Goldman, Kessler & Underberg, Rochester, N.Y., for Alling & Cory Co.
 Marcus Mattson, Robert P. Mallory (argued), Lawler, Felix & Hall, Los Angeles, Cal., for Ingram & Co. d/b/a Ingram Paper Co.
 Harold E. Kohn (argued), Dianne M. Nast, Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pa., for plaintiff Class Representatives, Magazine Management Co. Inc., et al., appellees.
 Before WEIS, BECKER and VAN DUSEN, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 These appeals challenge the effect of a district court certification order that excluded a number of putative members from a plaintiff class. We conclude that the order was unambiguous, and its explicit denial of membership to designated entities, which included appellants, severed their connection with the case. Moreover, in the absence of timely intervention, appellants lacked standing to move for reformation of the class certification order. Even if their motions are treated as attempts at intervention, the district court did not err in refusing to redefine the class. Consequently, we will affirm the orders of the district court.
 
 
 2
 The Fine Paper Antitrust Litigation consists of thirty-eight suits, most of which were transferred in 1978 to the Eastern District of Pennsylvania by the Judicial Panel on Multidistrict Litigation. In re "Fine Paper" Antitrust Litigation, 453 F.Supp. 118 (Jud.Pan.Mult.Lit.1978); In re Fine Paper Antitrust Litigation, 446 F.Supp. 759 (Jud.Pan.Mult.Lit.1978). The complaints sought damages for antitrust violations with respect to the sale of fine paper.[1]
 
 
 3
 The various suits may be grouped into two categories. In the first, plaintiff purchasers of fine paper from the manufacturing mills charged that those concerns had engaged in a horizontal conspiracy to fix prices. These plaintiffs consisted of private purchasers and a group of states, the "minority states," that adopted the same theory.
 
 
 4
 The second group of suits, filed by the "majority states," alleged not only a horizontal agreement but also a vertical one that included certain wholesale paper merchants who had conspired with the mills. Among the defendants and co-conspirators in this group of cases were independent merchant houses and their subsidiaries or affiliates, that would also qualify as private purchasers plaintiffs in the first group of cases. The merchants' status as defendants and putative plaintiffs arises from the fact that they purchased paper from the mills and then resold it to the "majority states."[2]
 
 
 5
 Plaintiffs in both groups sought class action certification. See In re Fine Paper Antitrust Litigation, 82 F.R.D. 143 (E.D.Pa.1979). On February 16, 1979, the district court denied class action status to the second group, the "majority states," because their cases were not suitable for generalized proof.
 
 
 6
 On the same day, however, the court issued a class certification order for the first group of cases which distinguished between two categories of plaintiffs within that particular group. One was the "minority states" which was divided into five separate classes, each consisting of one state and the various governmental bodies within its respective borders. The second category, the nationwide direct purchaser class, is the one primarily at issue on this appeal. It was defined by the court as "all persons, other than governmental entities, in the United States, (excluding defendants and named co-conspirators in the MDL 323 actions, their respective subsidiaries and affiliates ) which during the period January 1, 1965 to June 30, 1977, purchased from any defendant, or any subsidiary thereof ... fine paper...." 82 F.R.D. at 147. (emphasis added).
 
 
 7
 The majority states proceeded on their separate ways, and on December 31, 1980 the court approved a settlement between them and the independent merchant houses named as defendants in those suits. The majority states' claims against the remaining defendants, the mills themselves, proceeded to trial and resulted in a judgment for the defendants which was affirmed on appeal. In re Fine Paper Antitrust Litigation, 685 F.2d 810 (3d Cir.1982).
 
 
 8
 Litigation in the private purchaser and minority states class actions also continued and resulted in a settlement of approximately $50,000,000. Following court approval of the settlement, final judgment was entered in those actions on June 18, 1981. The appellants here, independent merchant houses, filed claims to share in the settlement fund but were notified in August and September 1981 by the class representatives' executive committee that their claims were being recommended for disallowance. The reason stated was that appellants had been named as defendants or co-conspirators in the "majority states" cases and, therefore, had been excluded from the private purchaser class by the certification order.
 
 
 9
 Appellants then requested the district court to declare that they were members of the private purchaser class and entitled to share in the fund. In the alternative, they asked the court to amend the class definition to include them as members.
 
 
 10
 On November 3, 1981 the district court concluded that since appellants "were named as defendants or co-conspirators in one or more of the actions which have been consolidated under MDL 323 ..., they are specifically excluded from the plaintiff class as defined by the Court...." The court explained that appellants were excluded because "[t]he potential for a conflict of interest would have patently existed if the Court had included [appellants] in a class of plaintiffs which were bringing an action for antitrust violations against companies with whom these same [appellants] were accused of conspiracy to fix the prices of fine paper."
 
 
 11
 The court declined to redefine the class because under Federal Rule of Civil Procedure 23(c)(1) such action is permitted only "before the decision on the merits." Even assuming that it had the authority to do so, the court believed redefinition at that stage would be unfair to those plaintiffs who had relied on the court's original certification in deciding to remain members of the class and to approve the settlement. Any prejudice resulting from exclusion, said the court, was due to appellant's own "inaction" since "they were free to bring their own individual actions." Appellants timely appealed from this order denying the motion to compel participation in the settlement or to alter or amend the class certification order.
 
 
 12
 In December 1981, appellants also moved the district court to permit intervention for the "purpose of obtaining appellate review of [its] class certification order ... dated February 16, 1979." District Court's Memorandum of December 21, 1981. That motion was refused as being untimely, having been filed beyond the thirty day period for appeal from the judgment of June 1981. Appellants have appealed that denial as well, and we consolidated both cases.
 
 
 13
 Appellants' primary contention is that the certification order is ambiguous. They argue that other parties believed that appellants were included in the class and that the amount of their purchases was included by the plaintiffs in arriving at the settlement figure. Appellants contend they acted in a timely fashion in seeking redefinition of the certification order, since they acted promptly upon learning they were not to be included in the settlement.
 
 
 14
 Appellee plaintiff class representatives insist that the certification order of February 1978 is clear and definite. On that basis, they reason that the appellants' efforts at inclusion within the class came too late, and these appeals were not filed within the proper time. The settling defendants have neither briefed nor argued the issues.
 
 
 15
 Appellants' allegations of ambiguity rest upon the use of the word "defendants" in two places in the certification order. The first reference excludes "defendants ... in the MDL 323 actions." The second defines plaintiff class members as those who "purchased from any defendant ... fine paper...." Appellants argue that the word "defendants" should be given the same meaning in both instances and urge that the term be construed as descriptive of the group "from whom purchases must have been made to qualify for membership in the class."
 
 
 16
 We share the district court's view that the certification order is clear and understandable. When the order was issued, appellants were "defendants ... in MDL 323 actions," specifically in the suits filed by the majority states. Thus, they were unmistakably identified and excluded from the private purchaser class. Even before reaching the second use of the word "defendant" in the certification order, these appellants have been excluded from the class. There is no necessity to read further and no occasion to encounter any possible ambiguity.
 
 
 17
 We must give particular deference to the district court's interpretation of its own order. Appellants' contention that the parties and the court itself apparently treated them as members of the class is of no weight against the findings of the district court to the contrary. We conclude that the district court did not err in deciding that the plain terms of the certification order of February 16, 1979 excluded appellants from the class.
 
 
 18
 Appellants do not concede that the order severed their ties with the case entirely. They maintain that their status as putative members of the class encompassed within the scope of the private purchasers' original complaint continued nonetheless. They reason that the certification order placed them in the "twilight zone" we described in a previous appeal arising from the same Multidistrict Litigation. In re Fine Paper Litigation, State of Washington, 632 F.2d 1081 (3d Cir.1980). Consequently, appellants contend that the judgment of June 18, 1981 is not final and they remain putative class action members whose status has not yet been determined.
 
 
 19
 To evaluate appellants' argument, it is necessary to briefly review our holding in the earlier case where an appeal by the State of Washington was joined with that of the State of New York. The class representative in the latter suit had filed a complaint describing a national class of governmental entities that included New York and other states. The district court, however, certified a class consisting only of the state purportedly serving as the national class representative and governmental units within that state's borders. The order was silent as to all other putative class members.
 
 
 20
 We held that in those circumstances the district court could not properly dismiss the defendants from the suit after approval of their settlement with the certified class. New York and the other putative members of the national class were in a "twilight zone" because their status had not been adjudicated and final judgment could not be entered while their claims remained in suspended animation. 632 F.2d at 1087-88.
 
 
 21
 In the case at bar, however, there is no "twilight zone." The status of all putative class members coming within the scope of the original and amended complaints of the private purchaser group was defined by the specific and comprehensive language in the order of February 16, 1979. Appellants' exclusion from the class eliminated the uncertainty which characterized the New York situation. Unlike the New York case, the district court here was in a position to properly enter a final judgment.
 
 
 22
 As of February 16, 1979, therefore, appellants were not in the private purchaser class. Having been explicitly barred, appellants were no longer putative members, or parties to the suit in any capacity. At that point, they had two options--file a separate suit or intervene in the pending litigation.[3] They chose not to file a separate suit and did not attempt to formally intervene until December 3, 1981, almost six months after the entry of the final judgment.
 
 
 23
 We noted in the Washington case that since New York was in the twilight zone, it did not have standing to challenge the settlement reached between the defendants and the certified class. Since no valid final judgment had been entered, New York still had the opportunity to apply for intervention. We confront a somewhat similar standing problem here.
 
 
 24
 We begin with the appellants' reaction to the class representatives' disallowance of their claims to the settlement. Appellants sought relief on two alternative grounds. The first request was that the court interpret the class order so as to include appellants and on that basis direct the payment of appellants' claims. The thrust of this motion was that appellants were class members and as such were entitled to participate in the settlement fund. As purported members of the class, appellants did have standing to present that motion for resolution by the court. Although the district judge determined ultimately that they were not class members, appellants also have standing to appeal the correctness of that decision.
 
 
 25
 In the alternative, appellants sought alteration of the certification order by changing its language so that the appellants would be added to the class of private purchasers. Because appellants failed to intervene and are not parties, they lack standing to assert this claim. Properly or improperly, appellants had been removed from the class of private purchasers by virtue of the certification order. Whether they sought to reform the class to comport with the alleged intention of the parties, or to enlarge the class to meet their view of the equities of the case, appellants stood as strangers to the class as defined by the court. Without intervention, therefore, they had no standing to present the matter to the court. In re Fine Paper Litigation, State of Washington, 632 F.2d at 1087; Pennsylvania v. Rizzo, 530 F.2d 501, 507 (3d Cir.), cert. denied, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976).[4]
 
 
 26
 Even if appellants' motion were treated as a petition to intervene, appellants could not prevail. An application to intervene, whether of right or by permission, must be timely under the terms of Rule 24. The timeliness of a motion to intervene is "determined from all the circumstances" and, in the first instance, "by the [trial] court in the exercise of its sound discretion." NAACP v. New York, 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973). We must affirm a denial of intervention based on lack of timeliness unless we find an abuse of discretion.
 
 
 27
 We have listed three factors to aid evaluation of the timeliness issue--"(1) How far the proceedings have gone when the movant seeks to intervene, (2) [the] prejudice which resultant delay might cause to other parties, and (3) the reason for the delay." Pennsylvania v. Rizzo, 530 F.2d at 506 (citations omitted) (quoting Nevilles v. EEOC, 511 F.2d 303, 305 (8th Cir.1975)). Accord Delaware Valley Citizens' Council for Clean Air v. Pennsylvania, 674 F.2d 970, 974 (3d Cir.1982); see also Janusziewicz v. Sun Shipbuilding & Dry Dock Co., 677 F.2d 286, 293 (3d Cir.1982) (analogizing Rule 24 to administrative proceeding; "petition to intervene must be determined from all circumstances, including the purpose for which the intervention is sought and the likelihood of prejudice to those already in the case.")
 
 
 28
 While the point to which a suit has progressed is only one factor for consideration, we have observed that a "motion to intervene after entry of a decree should be denied except in extraordinary circumstances." Delaware Valley Citizens' Council for Clean Air v. Pennsylvania, 674 F.2d at 974; see 7A C. Wright & A. Miller, Federal Practice And Procedure Sec. 1916 at 579-83 (1972). Here, the motion was filed after settlement and entry of judgment, and thus, as observed by the district court, after expiration of the period under Rule 23(c)(1) for amending a class.[5] Given the late stage of these proceedings, and the nature of relief sought by appellants, the first factor weighs heavily against appellants. Janusziewicz v. Sun Shipbuilding & Dry Dock Co., 677 F.2d at 293; Halderman v. Pennhurst State School and Hospital, 612 F.2d 131, 134 (3d Cir.1979); Hoots v. Pennsylvania, 495 F.2d 1095 (3d Cir.), cert. denied, 419 U.S. 884, 95 S.Ct. 150, 42 L.Ed.2d 124 (1974).
 
 
 29
 In considering possible prejudice to the parties, the district court stated that the members of the class, in determining whether the settlement was adequate, had a right to assume that appellants would not share in the proceeds. Moreover, appellants had not been subjected to the risk of an adverse judgment since they were not part of the class. Citing American Pipe & Construction Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the court reasoned that adding members to the class after judgment would have frustrated one of the purposes of Rule 23, that is, to identify members before trial so that they would be bound by all subsequent orders and judgments.
 
 
 30
 Intervention at this stage of the proceedings would therefore harm the original parties through dilution of the settlement fund, relitigation of the class issue, or reevaluation of the adequacy of the settlement. In each instance, "the interest in basic fairness to the parties and the expeditious administration of justice" militates against intervention. Pennsylvania v. Rizzo, 530 F.2d at 507. See Delaware Valley Citizens' Council for Clean Air v. Pennsylvania, 674 F.2d at 975; Moten v. Bricklayers, Masons and Plasterers International Union, 543 F.2d 224, 228 (D.C.Cir.1976). Moreover, as the district court observed, appellants have always been free to bring their own suit.
 
 
 31
 Although appellants knew or should have known long before settlement that their interest was not protected, they failed to take the necessary steps in their own behalf. They presented no reason for their delay to the district court which would justify us in finding an abuse of discretion. See United Airlines, Inc. v. McDonald, 432 U.S. 385, 394, 97 S.Ct. 2464, 2469, 53 L.Ed.2d 423 (1977); Delaware Valley Citizens' Council for Clean Air v. Pennsylvania, 674 F.2d at 974-75. We conclude that the district court properly refused to allow intervention to amend the class description. Hence, we will affirm the judgment in No. 82-1033.
 
 
 32
 For the reasons discussed above, we also affirm the district court's denial of appellants' motion to intervene for the purpose of appealing the class certification order. Appellants' position on this issue is based primarily on United Airlines, Inc. v. McDonald, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977). There, however, members of the former putative class moved to intervene after final judgment in order to appeal the denial of a certification order that the named plaintiffs did not intend to contest. In approving post-judgment intervention, the Court stated that the unnamed class members moved to intervene "as soon as it became clear ... that the interests of the unnamed class members would no longer be protected by the class representatives...." 432 U.S. at 394, 97 S.Ct. at 2469. By contrast, appellants here did not seek intervention until long after they should have realized that they were not members of the certified class.
 
 
 33
 As United Airlines noted, motions to intervene that simply make the intervenor a "superfluous spectator" are to be discouraged. 432 U.S. at 394 n. 15, 97 S.Ct. at 2470 n. 15. See In re Fine Paper Litigation, 632 F.2d at 1088 n. 5. But this appeal does not present the situation where intervention early in the proceedings would have been premature and possibly unnecessary. Appellants would not have been "superfluous spectators" but active participants. Such intervention was required of New York in our earlier decision.
 
 
 34
 In deciding the first appeal, we necessarily have had to consider the merits of appellants' objection to the class certification order of February 16, 1979. The second appeal is from the district court's order in refusing to allow formal intervention for the specific purpose of challenging the provisions of that very same certification order. In the circumstances of this case, it would be futile to allow intervention in order to present grounds on appeal which we have already rejected. See Stotts v. Memphis Fire Department, 679 F.2d 579, 582 (6th Cir.1982) (trial court rejecting intervention properly considered, as one factor, that relief sought was unavailable as a matter of law); Burkhalter v. Montgomery Ward and Co., 676 F.2d 291, 294-95 (8th Cir.1982) (denial of intervention to appeal harmless where denial of class status proper in view of named party's failure to proceed); Halderman v. Pennhurst State School and Hospital, 612 F.2d at 134. Thus, had there been error associated with the trial court's failure to allow intervention, it would be harmless.
 
 
 35
 The orders of the district court will be affirmed.
 
 
 
 [1]
 The district court described "fine paper" as:
 "All printing and writing papers and all paper products into which such papers are converted, including coated and uncoated book, publication (excluding newsprint), printing and converting papers, offset papers, chemical writing papers (bond and writing, form bond, ledger, mimeograph, duplication and related papers), cotton content papers, cover and text papers, thin papers (excluding cigarette, condenser and filter papers), and bristols."
 In re Fine Paper Antitrust Litigation, 82 F.R.D. 143, 147 (E.D.Pa.1979).
 
 
 [2]
 The majority states that purchased fine paper from the independent merchants were not able to recover from the mills on a purely horizontal conspiracy theory because Illinois Brick v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), permits suits only against the direct seller
 
 
 [3]
 The statute of limitations would have been tolled, at least for intervention, until the date of the certification order. American Pipe & Construction Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Compare Pavlak v. Church, 681 F.2d 617 (9th Cir.1982), petition for cert. filed, 51 U.S.L.W. 3320 (U.S. Oct. 12, 1982) (No. 82-650) (period not tolled for separate suits) with Parker v. Crown, Cork & Seal Co., 677 F.2d 391 (4th Cir.1982), cert. granted, --- U.S. ----, 103 S.Ct. 338, 74 L.Ed.2d ---- (1982) (tolling rule of American Pipe applies to new suits as well as to motions to intervene.)
 
 
 [4]
 See also SEC v. Investors Security Leasing Co., 610 F.2d 175, 177-78 (3d Cir.1979). (Proof of claim form not adequate notice of claim and could not be taken as motion for intervention). Other courts have taken a similar view, see Dunlop v. Pan American World Airways, Inc., 672 F.2d 1044, 1051-52 (2d Cir.1982) (for lack of standing, Rule 60(b) not ordinarily available to non-parties to modify settlement decree; motion granted in view of non-party's close connection with named party and named party's 'motion' to amend); In Re Beef Industry Antitrust Litigation, 589 F.2d 786, 788-89 (5th Cir.1979) (trial court's treatment of motion by non-party to modify or clarify protective order viewed as equivalent of intervention, thereby allowing entertainment of motion); Spangler v. Pasadena Board of Education, 552 F.2d 1326 (9th Cir.1977)
 
 
 [5]
 Rule 23(c)(1) provides that a class certification order "may be altered or amended before the decision on the merits." For commentary urging post-judgment certification, see Note, Reopening the Debate: Post Judgment Certification in Rule 23(b)(3) Class Actions, 66 Cornell L.Rev. 1218 (1981). We need not decide here whether amendment of a class certification following a decision on the merits is per se impermissible