James W. ARDREY d/b/a Ardrey Insurance Agency, Inc. and Anthony A. Criniti d/b/a Criniti Insurance Agency, individually and on behalf of all others similarly situated, Plaintiffs,

v.

FEDERAL KEMPER INSURANCE COMPANY, Defendant.

Civ.A.No. 90–7912.

United States District Court,
E.D. Pennsylvania.

March 6, 1992.

Patricia Carey Zucker, William R. Balaban, Balaban & Balaban, Harrisburg, Pa., for plaintiffs.

James J. Rodgers, Virginia L. Flick, William J. Brennan, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for defendant.

MEMORANDUM & ORDER

HUYETT, District Judge.

This action arises as a result of the Pennsylvania General Assembly's enactment of

automobile insurance reform legislation in February of 1990. *See* 75 Pa.C.S.A. §§ 1791–1799.7 ("Act 6"). Act 6 required insurers, *inter alia,* to reduce private passenger motor vehicle insurance by between ten (10) and twenty (20) percent. In reaction to this change in Pennsylvania's regulatory environment, defendant Federal Kemper Insurance Company ("Kemper") changed its system of insurance agent compensation in Pennsylvania. Plaintiffs, James W. Ardrey d/b/a Ardrey Insurance Agency, Inc. and Anthony A. Criniti[1] d/b/a Criniti Insurance Agency, filed a complaint in the instant action individually and on behalf of a putative class of approximately two hundred (200) Kemper insurance agents and agencies located in the Commonwealth of Pennsylvania. Plaintiffs contend that Kemper's change in compensation constituted a breach of its contracts with individual agents and agencies throughout Pennsylvania. Plaintiffs move pursuant to Fed.R.Civ.P. 23(b)(2) to maintain this litigation as a class action. Further, plaintiffs move pursuant to Fed. R.Civ.P. 23(d)(2) and 24(b)(2) for intervention of Bryce McLerran and Phil Carlin as named plaintiffs and class representatives. Defendant Kemper opposes both the motion for class maintenance[2] and the motion

for intervention. For the reasons stated below, I shall grant in part and deny in part plaintiffs' motion to maintain this litigation as a class action and I shall grant plaintiffs' motion for intervention.

## I. INTRODUCTION

Plaintiffs initiated this action on December 14, 1990. Plaintiffs essentially allege that Kemper attempted to re-write the compensation provisions of its contracts with insurance agents and agencies in Pennsylvania. Plaintiffs contend that Kemper's modification in the compensation system breached each of the approximate two hundred (200) agency agreements Kemper is party to in Pennsylvania. Defendant Kemper responds by arguing that its agreement with agents and agencies allows unilateral changes in the compensation scheme by Kemper.[3]

Plaintiffs state that prior to November 1, 1990, Kemper paid its agents a percentage of premium produced regardless of profitability. In other words, the Kemper agents were compensated based on a straight percentage of insurance premiums paid by the insured. In addition, Kemper awarded a profit sharing bonus for those agents with low loss ratios.[4] In reaction to Pennsylva-

---

**1.** The Court notes that in Plaintiffs' Motion For Intervention Of Bryce McLerran d/b/a Bryce & Associates Insurance And Phil Carlin d/b/a Phil Carlin Agency plaintiffs state that plaintiff Anthony A. Criniti is unable to continue in his capacity as a named plaintiff in this action as a result of a personal matter. The Court addresses the motion for intervention in Section III of this memorandum.

**2.** I note that both plaintiffs and defendant refer in their motions to "class certification." The Federal Rules of Civil Procedure make no reference to class certification, but rather address whether a class action *may be maintained* or is *maintainable.* Although the term "class certification" has gained acceptance by courts and commentators alike, *see e.g. McMahon Books, Inc. v. Willow Grove Associates,* 108 F.R.D. 32 (E.D.Pa.1985); R.M. Cover & O.M. Fiss, *The Structure of Procedure* (1979), I find use of the words prescribed by the Supreme Court in its adoption and amendment of the Federal Rules to be more precise and therefore preferable. Accordingly, the Court shall address only whether the class action may be maintained or is maintainable under the Federal Rules of Civil Procedure.

**3.** By Order of August 19, 1991, the Court concluded that the term "schedule of commissions" in Kemper's agency agreements with Pennsylvania insurance agents was ambiguous and accordingly denied defendant's motion to dismiss on this theory.

**4.** The use of loss ratios in profit sharing allowed Kemper to additionally compensate those agents whose business generated the most profit for Kemper. As Kemper explains: "[a]n agent's loss ratio is calculated by dividing the total dollars collected from policies written by an agent over a three year period by the total dollars paid for claims under those policies. *See generally* Insurance Information Institute, *Sharing the Risk* (3d Ed.1989). If the Company collects $100,000 in premiums from policies written by an agent but pays $60,000 in claims under the policies, the agent's loss ratio is 60%. For purposes of calculating an individual agent's loss ratio, the Company caps the dollar amount paid on an individual large loss at $175,000." *See* Kemper's Memorandum In Opposition To Plaintiffs' Motion For Class Maintenance at 3, n. 1, *citing* Complaint, Exhibit D.

nia's adoption of "Act 6," 75 Pa.C.S.A. §§ 1791–1799.7, Kemper redesigned its compensation system. In short, Kemper eliminated the previous profit sharing bonus and introduced loss ratios into the schedule of commissions.[5] Essentially, this change in Kemper's compensation system allowed Kemper to tie its compensation more closely to the profits generated by its individual agents.

Plaintiffs allege two other objectives as implicit in Kemper's change in compensation. First, plaintiffs contend that by forcing unpalatable agreements upon agents who cannot survive the loss in income resulting from the new compensation system, Kemper is able to circumvent the requirements of "Act 143," 40 P.S. § 241 *et seq.*, which restricts the at-will termination of insurance agreements in the Commonwealth of Pennsylvania. Second, plaintiffs argue that Kemper's use of loss ratios in calculating base compensation will create incentives for agents to eliminate business with adverse experience by circumventing Pennsylvania laws designed to limit the grounds upon which an insurer may cancel automobile insurance.

Kemper replies by contending that it acted within its contractual rights when it instituted the change in agent compensation. Further, Kemper denies the existence of any pretextual motives underlying its challenged action.

## II. MAINTENANCE OF THE CLASS ACTION

Plaintiffs possess the burden of establishing that the requirements of Rule 23 of the Federal Rules of Civil Procedure are met in order for this action to be maintained as a class action. *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Fed.R.Civ.P. 23(a) states the four following prerequisites for maintenance of a class action:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately protect the interests of the class.

*Id.*

If these four elements are satisfied, a class action may be maintained if the action falls within one of the three categories of Rule 23(b) of the Federal Rules of Civil Procedure. Plaintiffs assert that this action falls within Fed.R.Civ.P. 23(b)(2) which states:

the party opposing the class [i.e. Kemper] has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . .

*Id.*

Defendant Kemper opposes maintenance of the class action on three grounds. First, Kemper argues that plaintiffs fail to fulfill the numerosity requirement of Rule 23(a)(1). Second, Kemper argues that plaintiffs fail to meet the adequacy of representation standard of Rule 23(a)(4). Third, Kemper argues that plaintiffs' actions fail to fall within the rubric of either Rule 23(b)(2) or Rule 23(b)(3). In the alternative, Kemper argues that plaintiffs' class action is properly maintainable only under Fed.R.Civ.P. 23(b)(3) which states:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already com-

---

**5.** The introduction of loss ratios involved a number of other departures from the previous compensation system which need not be described or addressed here at length.

menced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

*Id.*

I shall address Kemper's arguments against maintenance of a class action in the order they are raised.[6]

### A. *Rule 23(a)(1)—Numerosity.*

■ "The numerosity test is one of practicability of joinder." *Ulloa v. City of Philadelphia,* 95 F.R.D. 109, 115 (E.D.Pa. 1982). Joinder need not be impossible, only impracticable. *Fox v. Prudent Resources Trust,* 69 F.R.D. 74, 78 (E.D.Pa 1975). "No magic number exists satisfying the numerosity requirement, nor must plaintiff[s] allege the exact number or identity of class members." *Moskowitz v. Lopp,* 128 F.R.D. 624, 628 (E.D.Pa.1989). "While the absolute number of class members is not the sole determining factor, generally the courts have found the numerosity requirement fulfilled where the class exceeds 100." *Prudent Resources Trust* at 78, *citing* 3B Moore's Fed. Practice § 23.05; *see also Kromnick v. State Farm Ins. Co.,* 112 F.R.D. 124 (E.D.Pa.1986).

■ In the instant matter, plaintiffs allege that the putative class approximates two hundred (200) insurance agents. Further, plaintiffs aver that seventy-three (73) members of the class are actively participating in prosecution of this action. Plaintiffs admit that joinder of these seventy-three agents or agencies is possible, but argue that it is neither practicable nor advisable. Plaintiffs provide two principle

reasons for the impracticability of this joinder.

First, plaintiffs argue that although joinder of the seventy-three agents or agencies would create an action capable of securing injunctive relief for the remaining putative class members, class maintenance should be permitted because joinder would not entitle the remaining class members to retroactive monetary relief incident to the declaratory judgment. *See* Plaintiffs' Motion For Class Determination at 11–12, *citing Hummel v. Brennan,* 83 F.R.D. 141, 144 (E.D.Pa.1979) (holding that class action could be maintained and adopting the reasoning of *Mendoza v. Lavine,* 72 F.R.D. 520 (S.D.N.Y.1976) which permitted a class action to be maintained even though the benefit of injunctive or declaratory relief would run to all similarly situated persons).[7]

Second, plaintiffs argue that putative members of the class possess fears that Kemper will retaliate against them by discontinuing their agency relationships if they prosecute the instant action. Plaintiffs contend that these fears justify flexibility in application of the numerosity requirement. *See e.g. Slanina v. William Penn Parking Corp., Inc.,* 106 F.R.D. 419, 423–24 (W.D.Pa.1984) (holding fears of reprisal and retaliation to justify flexibility in application of numerosity requirement in an employment discrimination action under Title VII).

■ Both of plaintiffs' arguments militate toward the conclusion that the numerosity requirement of Fed.R.Civ.P. 23(a)(1) is fulfilled. Neither of plaintiffs' contentions, however, squarely addresses impracticabili-

---

**6.** The Court notes that Kemper only objects to class maintenance on the grounds that Fed.R.Civ.P. 23(a)(1)'s numerosity requirement and Fed.R.Civ.P. 23(a)(4)'s adequacy of representation requirement are not met. After reviewing plaintiffs' motion and supporting memorandum for class maintenance, the Court concludes that plaintiffs have met the commonality and typicality requirements of Rule 23(a). The common question of whether Kemper repudiated its contracts with its Pennsylvania agents exists, *see Apanewicz v. G.M. Corp.,* 80 F.R.D. 672, 676 (E.D.Pa.1978), and the representative plaintiffs claims are typical since they arise from the

same event and are based on the same legal theory. *See Wilmington Firefighters v. City of Wilmington,* 109 F.R.D. 89, 93 (D.Del.1985).

**7.** The *Mendoza* court stated: "it seems advisable to cautiously safeguard the interests of the entire class by ensuring that any order runs to the class as a whole. Were this unnecessary, class [maintenance] pursuant to Rule 23(b)(2) would, arguably, never be necessary. Moreover, class [maintenance] will also help to avoid any future problem of mootness." *Mendoza* at 523.

ty of joinder in conventional terms. Typically, courts evaluate impracticability of joinder in terms of three considerations: (1) the size of the putative class; (2) the geographic location of the members of the class; and (3) the relative ease or difficulty in identifying members of the class for joinder purposes. *See e.g. Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 131–32 (1st Cir.1985), *cert. denied*, 476 U.S. 1172, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986); *Kilgo v. Bowman Transportation, Inc.*, 789 F.2d 859, 878 (11th Cir.1986). In this case, although the putative class may be as large as two hundred (200) members, the members are presumably easy to locate and identify as they all do business in Pennsylvania as Kemper agents or agencies. As a result, the Court confronts a close decision on whether the numerosity requirement of Rule 23(a) is satisfied.

Defendant Kemper's principle argument against the conclusion that the numerosity requirement is satisfied concerns plaintiffs' description of the putative class. Kemper contends that plaintiffs' numerosity argument improperly focuses on the number of Kemper agents or agencies in Pennsylvania and wrongly assumes that the number of Pennsylvania agents and agencies equals the number of class members. Kemper specifically alleges:

[plaintiffs'] approach, however, both vastly overstates the true size of the class for purposes of this litigation and misapprehends the inquiry under the numerosity requirement, *i.e.*, whether the claims are so numerous that joinder would be impracticable under the circumstances of the case.

Kempers' Opposition at 8, *citing In re Bexar County Health Facility Development Securities Litigation*, 125 F.R.D. 625, 628 (E.D.Pa.1989) (granting in part and denying in part motion to maintain suit as a class action), *rev'd on rehearing*, 130 F.R.D. 602 (E.D.Pa.1990) (reconsidering order allowing class action to be maintained

and dismissing plaintiffs' claims); [8] 7A C. Wright, A. Miller & M.K. Kane, *Federal Practice and Procedure* § 1762 at 151–53 (1986).

*In re Bexar*, however, supports plaintiffs' numerosity position. Specifically, Chief Judge Bechtle wrote: "[i]t is proper for the Court 'to accept common sense assumptions in order to support a finding of numerosity.' " *Id.* at 628, *quoting Wolgin v. Magic Marker Corp.*, 82 F.R.D. 168, 171 (E.D.Pa.1979). Given the apparent uniform introduction of loss ratios into the Kemper agent/agency compensation scheme, *In re Bexar* supports the common sense conclusion that the putative class consists of the two hundred (200) Kemper agents or agencies located in the Commonwealth of Pennsylvania.

Both parties offer cases in support of their positions based purely on the number of putative class members. *See e.g. Minersville Coal Co. v. Anthracite Export Assoc.*, 55 F.R.D. 426 (M.D.Pa.1971) (class of 330 not impracticable); *In re Anthracite Coal Antitrust Litigation*, 78 F.R.D. 709 (M.D.Pa.1978) (class of 141 not impracticable); *Inmates of Lycoming County Prison v. Strode*, 79 F.R.D. 228 (M.D.Pa.1978) (class of 50 members satisfied numerosity requirement); *Philadelphia Electric Company v. Anaconda American Brass Co.*, 43 F.R.D. 452 (E.D.Pa.1968) (class of 25 members satisfied numerosity requirement); *Samuel v. University of Pittsburgh*, 56 F.R.D. 435 (W.D.Pa.1972) (class of 71 members satisfied numerosity requirement). None of these cases provide compelling guidance regarding satisfaction of the numerosity requirement. Rather, these cases highlight a variance in court approaches to questions of impracticability of joinder.

In resolving the question of whether the numerosity requirement is satisfied, the Court adopts the reasoning of *McMahon Books, Inc. v. Willow Grove Associates*, 108 F.R.D. 32 (E.D.Pa.1985) (VanArtsdalen,

---

**8.** I note that defendant identifies *In re Bexar* as a case decided in the Middle District of Pennsylvania. The correct citation for this case is *In re Bexar County Health Facility Development Securities Litigation*, 125 F.R.D. 625, 628 (E.D.Pa. 1989) (Bechtle, J.), *rev'd on rehearing*, 130 F.R.D. 602 (E.D.Pa.1990).

J.) (holding tenants in a shopping mall could maintain a class action under Fed. R.Civ.P. 23(b)(3)). Judge VanArtsdalen persuasively reasoned:

[a]lthough plaintiffs estimate 125 potential class members, there is no evidence as to the number of tenants who desire to assert any claim against the defendants. At best, the evidence supports the inference that anywhere from thirty to fifty tenants who attended the tenants' association meetings are interested in proceeding against defendants.

All potential class members who want to join could seek leave to join by motion. Such individual joinder would be neither difficult nor impossible. Should a substantial proportion of the potential class members seek joinder upon motion, however, the procedure would be inefficient, costly, time-consuming, and probably confusing to all parties litigant. I think it is clear, therefore, that "joinder of all members is impracticable." As Chief Judge Luongo has admonished "only impracticability, not impossibility, is required [under Rule 23(a)(1).]" *Fox v. Prudent Resources Trust,* 69 F.R.D. at 78. In the present case joinder would not be impossible, but it would be impracticable.

*Id.* at 35.

Here, the potential class numbers two hundred (200) and at least seventy-three (73) members are interested in proceeding against defendant Kemper. The rationale articulated in *McMahon Books* supports the conclusion that, although not impossible, joinder in the instant matter would be impracticable. Therefore, the Court concludes that plaintiffs satisfy the numerosity requirement of Fed.R.Civ.P. 23(a)(1).

B. *Rule 23(a)(4)—Adequacy of Representation.*

█ "Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation,[9] and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel,* 508 F.2d at 247, *citing Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir.1968). Named plaintiffs argue that they adequately represent the proposed class and contend that each member of the proposed class stands to suffer injury as a result of Kemper's change in the compensation system.

Defendant Kemper contends that named plaintiffs are inadequate because there is potential antagonism between the named plaintiffs' claims and the claims of the proposed class. Kemper argues that many of the purported class members do not share the goals of plaintiffs' lawsuit and actually benefit from the changed compensation system that plaintiffs challenge in this action. As a result of this alleged conflict in the interests of the potential class members, Kemper contends that a potential for antagonism exists between the class members that prevents maintenance of a class action. *See Hansberry v. Lee,* 311 U.S. 32, 44–45, 61 S.Ct. 115, 119–20, 85 L.Ed. 22 (1940); *Wetzel v. Liberty Mutual Life Ins. Co.,* 508 F.2d at 247; *Horton v. Goose Creek Independent School District,* 690 F.2d 470, 485 (5th Cir.1982), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983); *Bonser v. State of New Jersey,* 605 F.Supp. 1227, 1236 (D.N.J.1985).

Kemper relies chiefly on *Bonser* in support of its position. In *Bonser,* a union pension and welfare fund administrator challenged the constitutionality of the introduction of diagnostic related groups ("DRGs") into New Jersey's hospital rate setting system. The fund administrator sought to maintain the action as a class action with the beneficiaries of the pension

---

**9.** Kemper states that it "does not question the competence of class counsel; however, Plaintiffs' Memorandum does not indicate that counsel has extensive experience in class action litigation in this district." Kemper's Opposition at 12, n. 3. The Court is satisfied that plaintiffs' attorney is qualified, experienced and generally able to conduct the instant litigation. Plaintiffs' counsel possesses expertise in insurance law and has prosecuted class actions in the past. Therefore, plaintiffs' counsel fulfills the requirements implicit in Rule 23(a)(4). *See Hummel v. Brennan,* 83 F.R.D. at 145.

and welfare fund being the potential class members. The Court in *Bonser* stated:

> another significant problem is encountered by plaintiffs in the fourth factor, that the representative parties will fairly an adequately protect the interests of the class. By this action, plaintiffs are challenging the constitutionality of New Jersey's hospital rate setting system. *As plaintiffs have conceded in their papers, there have been instances where the Fund* (and as a result its beneficiaries) *has clearly benefitted from the DRG system.* It is conceivable then, that from within the broad class alleged to exist, there will be members who will feel their interests are best protected by an interpretation of the plan's terms in a way authorizing payment of the DRG amount rather than scrapping the DRG system altogether.

*Id.* at 1235–36.

*Bonser* is, however, distinguishable from the instant action. No persuasive evidence has been provided which demonstrates that the putative class members, i.e. Kemper's agents and agencies, have benefitted from Kemper's introduction of loss ratios. Rather, plaintiffs offer persuasive evidence that every member of the potential class stands to suffer injury as a result of Kemper's change in the compensation system.

**10.** In addition, plaintiffs' motion for intervention reveals that other agents with different loss ratios have also suffered decreases in revenues. *See* Plaintiffs' Memorandum In Support Of Intervention at 3–6.

**11.** The Court notes that defendant attaches a comparison of commissions paid to Kemper agents in 1990 and 1991. *See* Kemper's Memorandum In Opposition To Class Maintenance at Exhibit A. In arguing against plaintiffs' adequacy of representation, defendant Kemper does not reference this exhibit. Assuming that Kemper relies on Exhibit A in support of the position that putative class members have benefitted from the 1990 schedule implementation, I shall address the reasons why Exhibit A fails to provide persuasive evidence that members of the putative class have benefitted from the change in the compensation scheme. First, only thirty-one (31) of the two hundred and twenty-seven (227) accounts listed in Exhibit A reflect increased compensation from 1990 to 1991. Second, Exhibit A provides no information regard-

■ Plaintiffs provide compelling anecdotal evidence that each member of the class stands to suffer injury as a result of Kemper's change in the compensation system. Plaintiffs' memorandum in support of class maintenance shows that individual insurance agents with different premium volumes and markedly different loss ratios suffered losses as a result of Kemper's changed compensation scheme. Plaintiffs' Memorandum In Support Of Class Maintenance at 19.[10] "There are diverse issues of fact in all class actions." *Anderson v. Rizzo,* 80 F.R.D. 72, 76 (E.D.Pa.1978). This alone will not prevent maintenance of a class action. *Id.*

■ Defendant Kemper contends that members of the putative class have benefitted from the 1990 schedule implementation. Kemper provides no support for this position beyond the assertion itself.[11] Kemper also argues that "a number of potential class members have voluntarily sought to disassociate themselves from this action." Kemper's Memorandum In Opposition To Class Maintenance at 13–14. In support of this position, Kemper provides the affidavit of Ken Humphreys, the Vice President of Marketing for Kemper. The Court does not find the affidavit of Mr. Humphreys to constitute persuasive evidence that antagonism exists among members of the putative class.[12]

ing the relative amounts of insurance written and loss ratios experienced between the two years by the agents or agencies. Finally, it is unclear whether the amounts listed for 1990 in Exhibit A include or exclude the previous profit sharing compensation. Thus, the Court is unable to discern any relevant information from Exhibit A.

**12.** Mr. Humphreys' affidavit avers that a number of Kemper agents writing policies in Pennsylvania have contacted Humphreys to state that they do not wish to be associated with the instant lawsuit. The affidavit is unreliable because it contains hearsay not within any exception to the evidentiary rules excluding out of court statements offered for the truth of the matter asserted. *See e.g. Ocean Bio–Chem, Inc. v. Turner Network Television, Inc.,* 741 F.Supp. 1546, 1558–60 (S.D.Fla.1990). Further, the affidavit simply alleges that certain Kemper agents have stated that they do not wish to prosecute this action. This does not, *a fortiori,* lead to the conclusion that Kemper agents possess legal or

Given plaintiffs' persuasive evidence that named plaintiffs adequately represent the putative class and the absence of any evidence that putative class members possess conflicts of interest or mutual antagonism, the Court is satisfied that the requirements of Rule 23(a)(4) have been fulfilled.[13]

### C. *Maintenance Under Rule 23(b)(2) or 23(b)(3).*

Plaintiffs satisfaction of the four (4) requirements of Fed.R.Civ.P. 23(a) does not end the inquiry as to whether this litigation may be maintained as a class action. In addition to fulfilling Rule 23(a)'s requirements, plaintiffs must demonstrate that the proposed class falls within the rubric of either Rule 23(b)(2) or 23(b)(3). Rule 23(b)(2) addresses actions brought for injunctive and/or declaratory relief,[14] while Rule 23(b)(3) is used in cases where the common legal or factual issues predominate over individual issues and a class action is the superior method for litigating the controversy.

■ Plaintiffs urge the conclusion that this action is maintainable under Rule 23(b)(2). Plaintiffs contend that Kemper acted on grounds applicable to the class by unilaterally changing the agent compensation scheme throughout the Commonwealth

of Pennsylvania. Further, plaintiffs argue that final injunctive or declaratory relief is appropriate with respect to the class of Kemper agents writing policies in Pennsylvania because plaintiffs seek a judicial declaration regarding paragraph four (4) of Kemper's agency agreements and a corresponding order enjoining Kemper's breach of the agency agreements. In essence, plaintiffs argue that this case falls within the rubric of those Rule 23(b)(2) class actions where requests for backpay or retroactive relief are incident to a primary prayer for declaratory or injunctive relief. *See e.g. Inda v. United Air Lines, Inc.,* 83 F.R.D. 1, 13 (N.D.Cal.1979).

■ Defendant Kemper opposes maintenance under Rule 23(b)(2) on two distinct grounds. First, Kemper argues that plaintiffs have failed to demonstrate that class maintenance is necessary to obtain the desired relief on a class-wide basis. *See e.g. Davis v. Smith,* 607 F.2d 535, 540 (2d Cir.1978). For the reasons stated in *Mendoza v. Lavine,* 72 F.R.D. 520 (S.D.N.Y.1976), I reject Kemper's argument. Second, Kemper contends that plaintiffs have failed to demonstrate an entitlement to either injunctive or declaratory relief and therefore have failed to fulfill the requirements of Rule 23(b)(2).[15]

economic interests in conflict with those of the named plaintiffs.

**13.** The Court notes that defendant Kemper has stated its intention to move to dismiss the claims of those class members who do not meet the amount in controversy requirement for actions based on diversity of jurisdiction. *See* Kemper's Memorandum In Opposition To Class Maintenance at 9–10, n. 2, *citing Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). Presumably, dismissal of those members of the class failing to meet the amount in controversy requirement would eliminate all class members possessing interests antagonistic to those of the named plaintiffs. If pursuant to a motion to dismiss, significant numbers of the class are dismissed, the Court will of course consider whether the action remains maintainable under Fed.R.Civ.P. 23. Further, if any unanticipated conflict should arise among the class members, the interests of all class members will be protected by the creation of subclasses pursuant to Fed.R.Civ.P. 23(c)(4)(B).

**14.** An obvious benefit of Rule 23(b)(2) maintenance is that there are no mandatory notice requirements or opting out procedures. *See Sayre v. Abraham Lincoln Federal Savings & Loan Association,* 65 F.R.D. 379, 383 (E.D.Pa. 1974), *modified,* 69 F.R.D. 117 (E.D.Pa.1975).

**15.** Defendant correctly states that "[i]njunctive relief is not ordinarily available to remedy a breach of contract," Kemper's Memorandum In Opposition To Class Maintenance at 16, *citing ECRI v. McGraw Hill, Inc.,* 809 F.2d 223, 226 (3d Cir.1987), and that injunctive "relief is available in a breach of contract action only if the subject matter of the contract is of a special or peculiar nature that damages would be inadequate or where it is impossible to ascertain damages." *Id.* In this case, plaintiffs have not demonstrated any basis for the special contract damage of injunctive relief. Further, defendant Kemper correctly notes that declaratory relief may only be had in federal court if an independent basis for jurisdiction exists. *See Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 670, 70 S.Ct. 876, 878, 94 L.Ed. 1194 (1950). Here, plaintiffs have not demonstrated whether each member of the class meets the jurisdictional

Because the Court concludes that this action relates predominately to money damages, defendant's argument need not be addressed.

■ "Class [maintenance] under Rule 23(b)(2) is not proper where the action seeks money damages as a major portion of the requested relief." *Wilcox Development Co. v. First Interstate Bank of Oregon*, 97 F.R.D. 440, 444 (D.Or.1983). Here, plaintiffs do seek declaratory and injunctive relief, but the predominant relief sought is money damages in the form of retroactive monetary relief for monies to be remitted by Kemper after February 1, 1991. This action was brought initially for permanent injunctive relief. Plaintiffs sought an injunction on Kemper's institution of the new compensation scheme on February 1, 1991. As the Court did not issue an injunction, the instant action has become a matter predominantly concerning monetary damages. Because the Court did not issue injunctive relief, plaintiff now seeks compensation retroactive to February 1, 1991. Further, under *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), each class members' claim presumably possesses a value of at least $50,000. In addition, assuming liability, plaintiffs have made no showing that injunctive or declaratory relief as opposed to compensatory damages is necessary. Finally, if the Court reaches the issue of damages, substantial Court resources will be expended calculating the individual monetary losses suffered by the class members. Therefore, the Court concludes that issues concerning money damages predominate and a Rule 23(b)(3) class is appropriate. *See e.g. Graybeal v. American Savings & Loan Ass'n*, 59 F.R.D. 7, 14 (D.D.C.1973).

amount in damages necessary to create an independent basis of jurisdiction. These defendant arguments question plaintiffs' right to judgment on the declaratory and injunctive claims, but do not authoritatively resolve whether final injunctive or corresponding declaratory relief is appropriate in this case. Fed.R.Civ.P. 23(b)(2).

■ Rule 23(b)(3) addresses those cases where "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). In this case, the basic thrust of the complaint is that defendant is liable for breaching its contracts with each member of the putative class. Although there may be different factual issues regarding individual agent's damages, there are significant common questions of law and fact with respect to liability.[16] The essence of plaintiffs' complaint is that Kemper illegally changed its compensation system in breach of the approximate two hundred (200) Kemper contracts with insurance agents and agencies in the Commonwealth of Pennsylvania. Considerations of judicial economy dictate that this controversy should be decided in a single litigation if possible. *See McMahon Books* at 40.

Rule 23(b)(3) also requires the Court to conclude "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The Court should base its conclusions on the following considerations:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

16. I note that defendant Kemper provided no argument against the conclusion that the commonality requirement of Fed.R.Civ.P. 23(a)(2) was fulfilled. As Kemper acquiesced to the conclusion that common questions of law and fact exist among the class members, presumably Kemper's only argument against 23(b)(3) main-

*Id.* [17]

The first factor for Court consideration is the interest of members of the class in individually controlling the pursuit of separate actions. Fed.R.Civ.P. 23(b)(3)(A). Here, each class members' damages will presumably exceed the jurisdictional amount of $50,000. *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). "When individual plaintiffs have such significant financial interests, they may desire to control their own claims." *McMahon Books, Inc.* at 40 (citations omitted). "On the other hand, there is no rule that such significant claims are inappropriate for class-action treatment." *Id.* Therefore, consideration of this factor does not weigh heavily in favor or against allowing the instant litigation to proceed as a class action.

The second factor for Court consideration is Rule 23(b)(3)(B)'s direction regarding collateral litigation. Plaintiffs and defendant have not referenced any other litigation concerning the instant matter. Further, the Court knows of no other case concerning this controversy. Therefore, Rule 23(b)(3)(B)'s direction concerning other litigation possesses no relevance to the Court's determination.

The third factor for Court consideration is the "desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed.R.Civ.P. 23(b)(3)(C). Class litigation in this forum would be more efficient than dispersed litigation. If the Court did not allow the class action to be maintained, certain plaintiffs would in all likelihood bring suit in other forums. This would lead to dispersed litigation with unnecessary transfer motions and needless delays. Consideration of this factor militates in favor of the conclusion that this action is maintainable under Rule 23(b)(3). *See McMahon Books* at 41.

The final factor for Court consideration is "the difficulties likely to be encountered in the management of a class action." Fed. R.Civ.P. 23(b)(3)(D). The difficulties likely to be encountered in this case arise from the individual issues of damages that the Court may be forced to confront. Assuming the issue of damages is reached, the Court will be forced to design a process or develop an approach to calculate the damages suffered by each class member. Despite this potential difficulty, given the predominance of common issues of law and fact and the strong interest in concentrating this litigation in this forum, a class action is the best approach to fairly and efficiently adjudicate the instant controversy.

As the four prerequisites of Rule 23(a) have been satisfied and the maintenance of a class action is appropriate under Rule 23(b)(3), the Court concludes that this action is maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

### III. MOTION FOR INTERVENTION OF BRYCE MCLERRAN AND PHIL CARLIN

Plaintiffs move pursuant to Fed.R.Civ.P. 23(d)(2) and 24(b)(2) for intervention of Bryce Mclerran d/b/a Bryce & Associates and Phil Carlin d/b/a/ Phil Carlin Agency as named plaintiffs and class representatives.[18] Both proposed intervenors are putative class members who have suffered losses as a result of Kemper's change in compensation and both intervenors represent class members with low loss ratios. Plaintiffs' stated reason for moving to intervene is "to strengthen the representation of the class," *see* Plaintiffs' Motion For Intervention at 1, in response to Kemper's argument that named plaintiffs Ardrey and Criniti fail to adequately represent the in-

---

tenance is that these common questions do not predominate over individual issues.

**17.** "Although the Rule indicates that these factors bear upon both the common-issues finding and the superiority finding, they appear to be more helpful in making the latter finding." *McMahon Books, Inc.* at 40.

**18.** The Court notes that technically the movants are Bryce Mclerran and Phil Carlin as opposed to plaintiffs Ardrey and Criniti. As the instant motion was filed by plaintiffs' counsel to strengthen the representation of plaintiffs' class, the Court shall refer to the motion as plaintiffs' motion for intervention.

terests of the class. *Id.* at 2. Further, plaintiffs seek to replace proposed class representative Criniti. *See* Plaintiffs' Memorandum In Support Of Intervention at 8.

Rule 23(d)(2) expressly recognizes the propriety of allowing intervention in class actions. In relevant part, Fed.R.Civ.P. 23(d)(2) states:

[i]n the conduct of actions to which this rule applies, the court may make appropriate orders ... for the protection of the members of the class or otherwise for the fair conduct of this action ... [which provide] the opportunity [for] members [of the class] ... to intervene and present claims or defenses, or otherwise come into the action ...

*Id.*

Both parties and the Court agree that the instant motion is one for permissive intervention under Fed.R.Civ.P. 24(b), rather than a motion for intervention of right under Fed.R.Civ.P. 24(a). Fed.R.Civ.P. 24(b) states:

[u]pon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) *when an applicant's claim or defense and the main action have a question of law or fact in common.* When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in this action. *In exercising its discretion the court shall consider*

*whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.*

*Id.* (emphasis added).

The Court must address whether plaintiffs have satisfied the requirements of Rule 24(b). Specifically, the Court must determine (A) if plaintiffs' application was timely filed; (B) if the proposed intervenors' claims and instant class action share common questions of law or fact; and (C) whether intervention will unduly delay or prejudice any party.[19]

### A. *Timeliness Of Intervention Motion.*

█ Plaintiffs contend that the motion for intervention was timely filed. Plaintiffs rely on the following facts to support the argument that the motion is timely: (1) the Court has yet to decide whether the action is maintainable as a class action; (2) no proceedings on the merits have occurred to date; (3) plaintiffs placed defendant and the Court on notice that additional members of the plaintiff class expected to move for intervention, *see* Plaintiffs' Memorandum In Support Of Class Maintenance at 18, n. 14; and (4) proposed intervenors McLerran and Carlin have submitted themselves to class maintenance discovery in anticipation of intervention.

█ Defendant Kemper strenuously objects to the conclusion that the motion was timely. Kemper correctly notes that this action was filed on December 14, 1990 and that the motion for intervention was filed eleven (11) months after the filing of the complaint[20] and one (1) week before the close of discovery on class maintenance. Further, Kemper correctly articulates the appropriate standard to be applied by a

---

**19.** Kemper also notes that plaintiffs are in technical noncompliance with Fed.R.Civ.P. 24(c) because the motion for intervention does not include the attachment of a pleading setting forth the claim or defense for which intervention is sought. Under *McCausland v. Shareholders Management Co.,* 52 F.R.D. 521, 524 (S.D.N.Y. 1971) (holding that motion to intervene was adequate where counsel's affidavit in support of motion stated that each intervenor adopted present complaint), the Court will disregard this

non-compliance with Fed.R.Civ.P. 24(c). *See* Plaintiffs' Motion For Intervention at ¶ 17.

**20.** The Court notes that plaintiffs cannot be penalized for the late date the motion for class maintenance was filed. The Court postponed class discovery pending the resolution of defendant's motion to dismiss which was denied on August 19, 1991. A conference was not held pursuant to Fed.R.Civ.P. 16 until October 8, 1991.

court evaluating timeliness under Rule 24(b)(2). Specifically, Kemper states: "a court should consider three factors when determining whether the timeliness threshold has been met: (1) how far the proceedings have progressed when the movant seeks to intervene; (2) the prejudice which resultant delay might cause the other parties; and (3) the reason for the delay." *See* Kemper's Memorandum In Opposition To Intervention at 5, *citing In re Fine Paper Antitrust Litigation*, 695 F.2d 494, 500 (3d Cir.1982). Application of this standard leads, however, to the conclusion that permissive intervention should be permitted in this case.

First, despite the long period of time that has elapsed between the filing of the complaint and the motion for intervention, this proceeding is in its early stages. The issue of class maintenance remained before the Court when the motion for intervention was filed. Further, the proceedings have yet to move forward on the merits. Second, Kemper fails to identify any actual prejudice it will suffer as a result of the intervention. Kemper principally argues that if the Court allows intervention it will be allowing plaintiffs to cure deficiencies in their class maintenance motion which places Kemper at disadvantage in contesting the appropriateness of a class action under Fed.R.Civ.P. 23. As the Court would allow this action to be maintained as a class action absent the motion for intervention, Kemper's argument lacks merit. Plaintiffs motion for intervention serves only to strengthen an already maintainable class, rather than to cure a class unfit for maintenance.[21] Third and finally, in consideration of the fact that discovery and briefing on maintenance of a class action did not begin until after the conference held in chambers on October 8, 1991, the motion for intervention on November 25, 1991 will not be considered untimely. Accordingly, under the test articulated in *In re Fine Paper Antitrust Litigation*, 695 F.2d 494, 500 (3d Cir.1982), the motion for intervention is deemed timely filed.

**B. *Common Questions of Law or Fact.***

The next issue the Court must address is whether the proposed intervenors' claims and instant class action share common questions of law or fact. The proposed intervenors were subject to the same change in their compensation and the proposed intervenors have raised the identical legal claims as the named plaintiffs. Defendant Kemper does not contest that the intervenors share common questions of law and fact with the class and its representatives. It is apparent to the Court that the proposed intervenors satisfy this requirement of Rule 24(b). *See In re Fine Paper Antitrust Litigation*, 695 F.2d 494, 500 (3d Cir.1982).

**C. *Undue Delay or Prejudice.***

The last issue the Court must address is whether intervention will unduly delay or prejudice any party. As the Court has decided that the class action is maintainable on this date and no litigation on the merits has occurred, it is apparent that intervention will cause no delay in the resolution of this action. Further, the proposed intervenors have made themselves available for discovery in anticipation of intervention, thus obviating any need for additional class maintenance discovery. Kemper makes no allegation that the putative class will suffer prejudice as a result of intervention. Further, in considering timeliness, the Court has already concluded that defendant Kemper will suffer no prejudice from the instant intervention. The intervention will therefore cause no undue

---

**21.** Kemper questions whether plaintiffs' desire to strengthen the class representation is a proper consideration in deciding the merits of a motion to intervene. Kemper correctly notes that the cases plaintiffs rely upon all arise after a court decision that a class is maintainable. *See e.g. Lewis v. Gross*, 663 F.Supp. 1164 (E.D.N.Y.1986); *Rogers v. Paul*, 382 U.S. 198, 86 S.Ct. 358, 15 L.Ed.2d 265 (1965). As the Court determined that the instant matter was maintainable as a class action independent of the motion for intervention, the Court shall treat the motion for intervention as being filed after the court determined that the litigation would proceed as a class action. Therefore, the propriety of plaintiffs' wish to strengthen its class representation cannot be disputed.

delay or prejudice. *See In re Fine Paper Antitrust Litigation,* 695 F.2d 494, 500 (3d Cir.1982). Accordingly, the motion for intervention of Bryce McLerran d/b/a Bryce & Associates Insurance and Phil Carlin d/b/a Phil Carlin Agency will be granted.

## IV. CONCLUSION

For the reasons stated above, I shall grant in part and deny in part plaintiffs' motion to maintain a class action and grant plaintiffs' motion for intervention of Bryce McLerran d/b/a Bryce & Associates Insurance and Phil Carlin d/b/a Phil Carlin Agency. An appropriate order follows.

## ORDER

Upon consideration of plaintiffs' motion to maintain this action as a class action pursuant to Fed.R.Civ.P. 23(c)(1) and Fed.R.Civ.P. 23(b)(2), the motion for intervention of Bryce McLerran d/b/a Bryce & Associates Insurance and Phil Carlin d/b/a Phil Carlin Agency pursuant to Fed.R.Civ.P. 23(d)(2) and Fed.R.Civ.P. 24(b)(2), defendant Federal Kemper Insurance Company's responses and for the reasons stated in the accompanying memorandum:

1. Plaintiffs' motion to maintain this action as a class action pursuant to Fed.R.Civ.P. 23(c)(1) and Fed.R.Civ.P. 23(b)(2) is GRANTED IN PART AND DENIED IN PART. This action shall proceed as a class action in accordance with Fed.R.Civ.P. 23(b)(3). The class of plaintiffs shall be defined as follows:

> All insurance agents and agencies, resident in the Commonwealth of Pennsylvania and licensed by the Pennsylvania Insurance Department to write property and casualty insurance lines on behalf of Federal Kemper Insurance Company.

2. The motion for intervention of Bryce McLerran d/b/a Bryce & Associates Insurance and Phil Carlin d/b/a Phil Carlin Agency pursuant to Fed.R.Civ.P. 23(d)(2) and Fed.R.Civ.P. 24(b)(2) is GRANTED.

3. Plaintiff Anthony A. Criniti d/b/a Criniti Insurance Agency shall move within seven (7) days of entry of this Order by the Clerk to be dismissed as a class representative.

4. The caption of this action shall be amended by the Clerk to reflect the intervention of Bryce McLerran d/b/a Bryce & Associates Insurance and Phil Carlin d/b/a Phil Carlin Agency as named plaintiffs.

5. Plaintiffs James W. Ardrey d/b/a Ardrey Insurance Agency, Inc., Bryce McLerran d/b/a Bryce & Associates Insurance and Phil Carlin d/b/a Phil Carlin Agency and their counsel are appointed to serve as representatives of the class of plaintiffs in this action.

6. Plaintiffs shall file by motion a proposed notice to the class as specified in Fed.R.Civ.P. 23(c)(2) within fourteen (14) days of entry of this Order by the Clerk. Defendant may file a response within seven (7) days of service.

IT IS SO ORDERED.